## Monongahela River Consolidated Coal & Coke Company v. Lancaster's Administrator.

(Decided March, 8, 1916.)

### Appeal from Greenup Circuit Court.

1. Trial—Question for Jury—When Verdict Conclusive.—In an action by an administrator to recover damages for the death of his intestate, alleged to have been caused by the negligence of the defendant corporation's servants in charge of a towboat and barges, in running at too high speed, failing to maintain a look-out, failing to give warning of approach and to use ordinary care to rescue the decedent after collision with the small boat in which he was crossing a river; where the evidence was conflicting on every point at issue, it required submission to the jury and their verdict must be accepted as conclusive of the facts, as it is neither unsupported by nor flagrantly against the evidence.

2. Navigable Waters—Rights of Public.—A navigable stream is a public highway, which the public have a common right to use for navigation, regardless of the relative size or power of boats used; and in an action by an administrator for damages for the death of his intestate resulting from a collision of his small boat and a barge towed by defendant's boat, it was not incumbent upon the administrator to allege or prove that the decedent was exercising ordinary care for his own safety.

3. Negligence—Contributory Negligence—Burden of Proof.—Contributory negligence is a matter of defense, to be alleged and proved by the defendant, and where the facts relied on to show contributory negligence are disputed or the evidence contradictory, the question, like that of decedent's negligence must be left to the decision of the jury.

4. Appeal and Error—Argument of Counsel—When Not Prejudicial. —In view of the admission of the captain commanding defendant's boat, that collided with that of plaintiff's decedent, that he was trying to overtake and pass another steamboat, and testimony of other witnesses that his boat was running at her highest rate of speed, the inference that the boat was racing was warranted, and such a statement by plaintiff's counsel by way of argument to the jury, was not prejudicial.

5. Appeal and Error—Misconduct of Counsel—When Objection to Not Shown by Record.—Where the record fails to show that objection to it was made at the time, or that the court was called upon to pass upon the competency of the argument constituting the alleged misconduct of counsel, the alleged error of the court in failing to exclude the statement complained of is not properly presented for review on appeal.

C. H. STEPHENS and E. E. FULLERTON for appellant.

THOMAS E. NICKEL, S. S. WILLIS, THEODORE K. FUNK and R. D. DAVIS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

This is an appeal from a judgment of the Greenup circuit court entered upon a verdict awarding the appellee, C. W. Kidd, as administrator of the estate of Arthur Lancaster, deceased, $1,800.00 damages against the appellant corporation, Monongahela River Consolidated Coal & Coke Company, for the death of his intestate, alleged to have resulted from the negligence of the appellant's servants in so operating its steamboat "Alice Brown" on the Ohio river as to suffer it to collide with and overturn a skiff or "john boat" in which the intestate was crossing the river, and thereby drown him and cause his death. The acts of negligence attributed to the appellant are contained in the following allegations of the petition:

"Plaintiff states that while his decedent, Arthur Lancaster, was crossing the Ohio river in a row boat at a point between Portsmouth, Ohio, and South Portsmouth, in Greenup County, Kentucky, the defendant company by its agents and servants carelessly and negligently caused the death of Arthur Lancaster by running into him and causing his row boat to sink and by negligently and

carelessly causing him to be run over and drowned in the said Ohio river and negligently and carelessly failing to rescue him after he had been carelessly and negligently thrown into the said river."

The appellant's answer denied the acts of negligence alleged in the petition and pleaded contributory negligence on the part of the decedent Lancaster, and the latter plea was denied by reply. Of the numerous grounds relied on by appellant for a new trial in the court below, only the following are urged for a reversal of the judgment: Error of the circuit court. (1) In refusing a peremptory instruction directing a verdict for appellant; (2) In instructing the jury; (3) In refusing instructions offered by appellant; (4) Misconduct of counsel in argument to the jury.

Lancaster was drowned about five o'clock p. m., September 10, 1913, while crossing the Ohio river in a boat propelled with double oars, called a "john boat," returning from Portsmouth, Ohio, where he worked, to South Portsmouth, Kentucky, where he resided, Portsmouth is a city of 28,000 population, South Portsmouth a town of 800 population. A ferry boat is operated between the two places, but as many as one hundred persons cross the Ohio river from each side to the other in boats or skiffs every day. The decedent was of the latter number. He was a brick mason and would leave his home in South Portsmouth early in the morning, cross the river in his boat to Portsmouth and return therein to South Portsmouth about five o'clock in the afternoon or evening. On the evening of the accident resulting in his death he was returning to his home at the usual time and when about half way across the river appellant's steamboat "Alice Brown," towing seventeen barges, ran into and overturned his boat, causing him to be thrown into the water, drawn under the barges and drowned. According to appellee's evidence the decedent in crossing the river and using the pair of oars by which his boat was propelled, had to row with his back in the direction the boat was going; this being the customary method of rowing such a boat and necessary in its operation. While thus rowing and unaware of the presence of the "Alice Brown" on the river, he approached and met another steamboat called the "A. B. Budd," also towing a number of barges. This boat, which was going up the river, though plainly seen by the decedent, had so remained between

him and the Alice Brown from the time he left the Ohio shore as to prevent him from seeing the latter until the A. B. Budd had passed him, and it was too late for him to get out of the way of the Alice Brown, which had for some time been following and trying to pass the A. B. Budd. Finding himself thus situated in front of the Alice Brown, the barges in front of which were yet at a distance of two hundred yards or more from the A. B. Budd, and being unable by going back toward the Ohio shore to get out of her way, the decedent adopted what several of appellee's witnesses testified was apparently the safest means of escape, viz.: he attempted to continue across her course by rapidly proceeding toward the Kentucky shore, in doing which his boat was struck and overturned by one of the barges towed by the Alice Brown, which threw him into the water and caused his death.

Appellee's evidence also strongly conduced to prove that though burdened with the numerous barges she had in tow, the Alice Brown had on a full head of steam, was going at full and a dangerous rate of speed in order to pass the A. B. Budd; that no signal was given by her whistle in approaching or passing the A. B. Budd, or lookout maintained for small boats known to be crossing the river at that time of day between the two towns mentioned; furthermore, that those in charge of the Alice Brown, after discovering the decedent's peril, could, by the exercise of ordinary care, have stopped her in time to prevent the collision with his boat and also to save his life after the collision, but failed to do so.

Although appellant's evidence differed from that of appellee as to most of the issues of fact made by the pleadings, it was not convincing as to its servants in charge of the Alice Brown giving any signal of its approach to the place of the accident, or contradictory of that of appellee as to the unusual speed of the boat, or that it was given such speed to enable it to pass the A. B. Budd. Nor did it materially contradict that of appellee as to the free use of the Ohio river at the place of the accident by numerous small boats at that time of the day and the familiarity of appellant's servants therewith. Appellant's evidence did, however, strongly conduce to prove that the crew of the Alice Brown did not see the decedent or discover his peril in time to prevent the barge towed by the Alice Brown from striking and overturning his boat; and that after discovering the boat had been overturned they made

every effort possible to save the decedent's life, by promptly lowering a yawl as soon as the boat could be stopped and manning and causing it to be rowed with all possible dispatch to where he was thrown into the water, for the purpose of rescuing him, but without being able to do so. Appellant also introduced evidence to the effect that the decedent's death was caused by his own negligence in failing to maintain a lookout for the Alice Brown and in attempting to cross in front of the barges she was towing, when the use of ordinary care would have enabled him to know that they were too close to his boat for him to do so without a collision, and that this negligence so contributed to his death that, but for same, it would not have occurred. From what has been said of the evidence it will readily be seen that it required the submission of the case to the jury, and their verdict must be accepted as conclusive of the rights of the litigants, as we are unable to say that it is unsupported by or is flagrantly against the evidence.

It is, however, insisted for appellant that the trial court should have peremptorily directed a verdict for it, first, because of a failure of proof as to appellant's negligence; second, because of the decedent's contributory negligence. The first of these contentions we have already shown to be unsound, but in elaboration of our view thereof it may further be said that such negligence on the part of appellant's servants is shown by proof of their failure to maintain a proper lookout from the Alice Brown for boats that they knew were accustomed to be crossing the Ohio river at the time and place of the accident, in their failure to give any warning of the coming of the boat; and also in the unsual speed at which they were running it. Such an amount of travel at the point in question put upon those in charge of the Alice Brown the duty of anticipating the presence of boats and their occupants on the river and of maintaining a lookout for them and so operating the boat and tow at such a reasonable rate of speed and with proper signal of its coming, as would give occupants of such boats an opportunity to avoid collision with the boat and tow. It being apparent from the evidence that the decedent's view of the Alice Brown and its tow was all the while obstructed by the A. B. Budd, until the latter had passed him, and that there was no signal from the Alice Brown to notify him of its approach, he was not aware of its presence until he was

passed by the A. B. Budd; and, upon discovering the Alice Brown, and being unable to back his boat out of her way, he immediately increased his speed in the attempt to escape the collision by crossing the intervening space in front of her. There is great contrariety of evidence as to whether the Alice Brown, after her crew discovered the peril of the decedent, could have been stopped in time to prevent a collision with his boat, but none as to the fact that no attempt was made by those in charge to stop her before the collision occurred. According to the evidence, however, if she had been running at a reasonable and the customary speed, she might have been stopped in time to have prevented the collision; and it is highly probable that if her whistle had been sounded before the decedent was passed by the A. B. Budd, the warning would have prevented him from putting himself in the place of danger following the passing of the A. B. Budd.

With respect to appellant's second contention it may be said that appellee was not required to allege or prove that the decedent was not guilty of contributory negligence, nor is either negligence or contributory negligence to be presumed. Each must be shown by proof of the acts constituting it or of the facts from which it may legitimately be inferred. Contributory negligence is a matter of defense and the law placed upon appellant the duty of alleging and proving that the decedent was guilty of contributory negligence but for which he would not have been drowned. Where the facts showing contributory negligence are admitted or uncontradicted, the trial court may, as a matter of law, peremptorily instruct the jury that such contributory negligence will prevent a recovery by the plaintiff; but where the facts relied on to show contributory negligence are disputed, or the evidence is contradictory, the matter must be left to the decision of the jury. Even if it conclusively appeared from the evidence that the act of the decedent, in attempting to cross in front of the Alice Brown after discovering its presence, was *prima facie* negligent, appellant, notwithstanding such negligence of the decedent, would still be liable for his death, if after discovering his peril, its servants in charge of the Alice Brown might or could by the exercise of ordinary care have prevented his death.

So, for the reasons indicated, it was the province of the jury in this case to determine, not only whether the appellant was guilty of negligence, but also whether the

decedent, under all the circumstances attending his death, as shown by the evidence, was guilty of such contributory negligence as ought to have prevented a recovery by his administrator of damages for his death. The determination of these questions was properly left to them by the instructions given in the case.

The Ohio river is a navigable stream and public highway of common right, upon which the decedent in his little boat had equal right of navigation with the steamboat Alice Brown. 16 Am. & Eng. Enc. of Law 236. In Genesee Chief v. Fitzhugh, 4 Howard (U. S. Sup. Ct.), 43, it was held that: "It is the duty of every steamboat to keep a trustworthy person employed as a lookout; and if there be none such additional to the helmsman and if he was not stationed in proper place or not vigilantly employed in his duty, it must be regarded as *prima facie* evidence that the collision was the fault of the steamboat." Monongahela Con., etc. Co. v. Shinnerer, 196 Fed. Rep., 379.

In 29 Cyc., 304, the law is thus stated:

"Where water is navigable, whether or not within the ebb and flow of the tide, the public have a common right to use it for navigation as a public highway without any legislative declaration that it is a public highway."

In Warner v. Ford Lbr. & Mfg. Co., 123 Ky., 103, we said:

"The people, for purposes of navigation, are entitled to the free and undisturbed use of every part of a stream from bank to bank, and such accessibility with respect to the stream as to render it capable of navigation by boats or the floating of logs; and this without regard to whether any part of the stream is occupied by booms." Williamsburg Boom Co. v. Smith, 87 Ky., 374.

In Johnson v. Westerfield, 143 Ky., 15, we held that the clause of the Federal judiciary act of 1889, saving to suitors of civil cases in admiralty and maritime jurisdiction a common law remedy where the common law is competent to give it, leaves with the courts of Kentucky the jurisdiction to try cases for the negligent or wrongful killing of persons by collision of boats, such action being authorized by section 241 of the State Constitution, Stewart v. Harry, 3 Bush, 438; Broadwell v. Swigert, et al., 7 B. Mon., 39; Inman, Gale, etc. v. Funk, 7 B. Mon., 538, 45 Am. St. Rep., 47; L. & N. R. R. Co. v. Johnson, 161 Ky., 284; Schulte v. L. & N. R. R. Co., 128 Ky., 628; L. & N. R. R. Co. v. Roth, 130 Ky., 759; C., N. O. & T. P.

Ry. v. Harrod, 132 Ky., 445; L. & N. R. R. Co. v. Lynch, 137 Ky., 696.

This case is to be determined, therefore, by the same general principles which govern travelers upon the highway, and this being so, the relative size or power of the boats is of little consequence in the consideration of the case. The law imposed upon the parties the duty to exercise ordinary care under the circumstances, and it was only necessary for the administrator to prove that the appellant's servants in charge of the Alice Brown were negligent in the operation thereof, or in failing to rescue the decedent from the water; and that such negligence resulted in his death. It was not incumbent upon the administrator to prove that the decedent was exercising ordinary care for his own safety at the time of his death, but in view of appellant's defense that he was not exercising such care, it was incumbent upon it to make out such defense by the evidence. It follows from what has been said that there was no error in the trial court's refusal of the peremptory instruction asked by appellant.

In our opinion, the objections made by the appellant to the instructions are wholly without merit. In order that it may be seen with what correctness and clearness the instructions stated all the law applicable to the case, we copy them in the opinion:

"No. 1.    The court instructs the jury that it was the duty of the persons in charge of the tow boat of the defendant Monongahela River Consolidated Coal & Coke Company, as it passed up the Ohio river between Portsmouth, Ohio, and South Portsmouth, Ky., at the time mentioned in the evidence to have the said boat Alice Brown and its tow under reasonable control and to keep a lookout ahead to avoid collision with persons that were using the river for passage and to exercise ordinary care to prevent coming into collision with, or injuring such persons, and if you shall believe from the evidence that the persons in charge of defendant's said boat negligently failed to perform these duties, or any of them, and that by reason thereof the plaintiff's intestate, Arthur Lancaster, came in collision with the defendant's tow and as a result thereof was thrown into the river and drowned then the law is for the plaintiff and you should find for him such sum in damages as you may believe and find from the evidence, will reasonably compensate the estate of the decedent, Arthur Lancaster, for the destruction of

his power to earn money not exceeding the sum of $3,000.00, the amount claimed in the petition.

"No. 2. The jury are further instructed that although they may believe and find from the evidence that upon the occasion in question the decedent, Arthur Lancaster, was himself negligent and that his negligent acts or conduct caused, or contributed to cause or bring about, the accident and his injury, yet, if the jury shall further believe and find from the evidence that the servants or employes of defendant in charge and control of its tow boat, Alice Brown, upon the occasion in question after obtaining knowledge of the peril or danger of the decedent from said tow boat or its barges, if they did so, could by the exercise of ordinary care and diligence on their part and with the means at their command have rescued the decedent or prevented him from drowning, then and in this event it was their duty to do so, and if the jury shall believe and find from the evidence that said servants or employes of defendant negligently failed to exercise such care and diligence after discovering the peril or danger of decedent and by reason and as the proximate result thereof decedent was drowned, then and in this event the law is for plaintiff and the jury should so find and fix his damages as indicated in instruction No. 1.

"No. 3. The jury are instructed that unless they shall believe and find from the evidence as indicated in the first or second instructions, then and in this event the law is for defendant and they should return a verdict for it.

"No. 4. The jury are further instructed that it was the duty of the decedent, Arthur Lancaster, in using the Ohio river on the occasion in question as a passway to exercise such care as may be usually expected of an ordinarily prudent person under like or similar circumstances to those shown to exist in this case by the proof to learn of the coming of the steamer Alice Brown and to keep out of its way and avoid injury therefrom or the boats or barges it was towing, and if the jury shall believe and find from the evidence that the decedent on the occasion in question failed to exercise such care for his own safety and but for such failure on his own part, if any there was, he would not have been struck, run over or injured by said boat or its tow of barges, then and in this event the law is for the defendant and the jury should find

for it although they may believe from the evidence the defendant was negligent in any or all the respects indicated in instruction No. 1, and that such negligent conduct on its part, if any there was, contributed to cause or bring about the injury and death of decedent.

"No. 5. The jury are instructed that the phrase 'ordinary care,' as used and meant in these instructions and as applied to both the defendant company and the decedent Arthur Lancaster, is that degree of care or such care as an ordinarily prudent person engaged in like or similar business, occupation or employment would ordinarily exercise under the same or similar circumstances to those shown to exist in this case by the proof; and the words, 'negligent' and 'negligently' as used and meant in these instructions and as applied both to defendant and the decedent is the failure to exercise ordinary care as defined in this instruction."

The instructions offered by appellant were properly refused. With slight change in phraseology, some of them might have been made to correctly state the law, but none of them was necessary, as those given by the court contained all the law required for the guidance of the jury in arriving at a verdict.

Appellant's complaint as to the misconduct of appellee's counsel in argument to the jury is without force, in view of the record's failing to show that objection was made to it at the time by appellant's counsel or that the court was called on to pass upon the competency of the argument constituting the alleged misconduct complained of. An order seems to have been entered at the instance of appellant's counsel, after the conclusion of the argument, in which it was attempted to reserve its exception, and the complaint also appears in the motion and grounds for a new trial, which first brought the matter to the attention of the court. The objection, therefore, came too late and, as the record stands, the alleged error of the court in failing to exclude from the jury the statement of appellee's counsel complained of is not properly presented for review by the appeal. Bannon v. Louisville Trust Co., 150 Ky., 401.

The alleged misconduct consisted in a statement from appellee's counsel by way of argument that the steamers Alice Brown and A. B. Budd were racing at the time of the accident. In view of the admission of the captain of the Alice Brown, appearing in evidence, that he was try-

ing to overtake and pass the A. B. Budd before it reached the Bonanza Bar and the testimony of other witnesses that the Alice Brown was running at her highest speed and doing her utmost to overtake and pass the A. B. Budd, it would seem that the inference or argument that the boat was racing was warranted by the evidence, for which reason the argument, even if hurtful to appellant, was not unauthorized or prejudicial.

The record furnishes no legal ground for disturbing the verdict, hence the judgment is affirmed.