Clara Rose **MELTON**, Administratrix of the Estate of Mark Melton, Deceased, Plaintiff-Appellant,

v.

**O. F. SHEARER & SONS, INC.,** Defendant-Appellee.

No. 19928.

United States Court of Appeals, Sixth Circuit.

Dec. 21, 1970.

H. Solomon Horen, Louisville, Ky., for plaintiff-appellant; W. Mallam Lake, Hartford, Ky., on brief.

T. Kennedy Helm, Jr., Louisville, Ky., for defendant-appellee; Lively M. Wilson, Stites & McElwain, Louisville, Ky., on brief.

Before PHILLIPS, Chief Judge, McCREE, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Plaintiff-appellant, Clara Rose Melton, administratrix of the estate of her deceased son, appeals from judgment entered upon a jury verdict which absolved defendant-appellee, O. F. Shearer & Sons, of liability for the alleged wrongful death of appellant's ten year old son. The son was drowned when a flatboat in which he was a passenger was swamped by stern waves created by appellee's towboat, then operating on the Green River in the State of Kentucky. This diversity case was removed to and tried in the United States District Court for the Western District of Kentucky.

The jury returned a verdict for the defendant, O. F. Shearer & Sons, Inc. The colloquy between the Court and jury foreman during the announcement of the verdict suggests that the jury may have found the navigator of the flatboat, Eugene Melton, father of the deceased boy, Mark Melton, and the pilot of the towboat, both guilty of negligence contributing to the casualty. Under applicable Kentucky law, contributory negligence of the father would be a defense in bar to the action. Emerine v. Ford, 254 S.W. 2d 938, 941 (Ky.1953); Burch v. Byrd, 246 S.W.2d 595 (Ky.1952).

Appellant charges error in the District Judge's refusal to allow plaintiff's counsel, having called him to the stand, to cross-examine and impeach the pilot of the defendant's towboat, either as a hostile witness, an adverse party, or as a managing agent of defendant. The witness, Claude A. Keymon, was not in the employ of defendant at the time of trial, but was still engaged as a river boat pilot for another employer, operating on the Green River. Plaintiff also charges error in the District Judge's refusal to allow in evidence those parts of the deposition of an expert witness called by plaintiff which were based in part upon answers given by the towboat's pilot in a pretrial deposition. Error is further assigned in the District Judge's refusal to give various instructions proffered by plaintiff, one of which would have allowed the jury to consider whether plaintiff should recover under the doctrine of last clear chance.

The involved fatal accident occurred during the daylight hours of Labor Day, September 4, 1967. Defendant's towboat, the Etta Kelce, was pushing four empty barges upstream in the Green River, in Kentucky. At the scene, Green River forms the boundary between Muhlenberg County on the right and Ohio County on the left, as boats proceed upstream. The towboat was negotiating a left bend in the river. The plaintiff's deceased, Mark Melton, along with two brothers and a friend, was riding in a small flatboat operated by his father. The flatboat was proceeding downstream, some distance above the approaching towboat. Deciding that he could not safely proceed to the Ohio County side where the party was going hunting, the deceased's father crossed the river ahead of the towboat and began angling downstream toward the Muhlenberg County side. Before he reached a place of safety, the flatboat was swamped by one of the towboat's stern waves. Young Melton was drowned when the flatboat sank. Plaintiff charged that the cause of the boy's death was the negligent operation of the towboat and its barges, and that the operator of the flatboat, the deceased boy's father, was exercising due care. Plaintiff also claimed that the conduct of the towboat's pilot was such that the jury should have been allowed to fix liability on defend-

ant by application of the last clear chance doctrine.

### 1. Cross-examination and impeachment of defendant's pilot.

Claude A. Keymon was acting as pilot of the tow unit during the events here considered. He had been subpoenaed by plaintiff, but arrived at court in the company of defendant's attorneys. He testified that although he had never been licensed as a pilot, he was, at the relevant time, exclusively in control of the Etta Kelce and its barges. He was called to the stand by plaintiff's counsel "as if on cross-examination, being a hostile witness." Upon objection of defense counsel that Keymon was no longer in the employ of defendant and had not been shown to be hostile, the District Judge advised plaintiff's counsel that Keymon would be his witness and thereafter forbade cross-examination by leading questions or otherwise, and refused to allow plaintiff's counsel to impeach Keymon's testimony or refresh his recollection by using statements made by Keymon in a pretrial deposition. The District Judge's ruling also frustrated plaintiff's use of some parts of the de bene esse deposition of plaintiff's expert witness, Captain Duncan, a pilot licensed to navigate towboats and barges on the Green River in Kentucky. A pretrial discovery deposition of defendant's pilot, Keymon, had been taken prior to the taking of Captain Duncan's deposition. A hypothetical question was put to Duncan as an expert, based in part upon facts which had been testified to in Keymon's deposition. Keymon's deposition had been denied admission in toto, because of the Court's above ruling. Objection was therefore sustained to such parts of the deposition testimony of Captain Duncan as were bottomed upon the deposition of Keymon. Appellant claims additional hurt to plaintiff's case, in that statements made by Keymon in his excluded deposition were allegedly relevant to and supportive of his claim that he was entitled to have the jury consider whether liability of defendant could be found based on the doctrine of last clear chance.

We need not here make a full exposition of the conflicts between Keymon's testimony in court and that given on his deposition. Sufficient to say that there were material conflicts between his trial and deposition accounts of what happened on the day young Melton was drowned.

### a) Keymon's hostility and status as managing agent of defendant, or adverse party.

In considering the foregoing subject, we are advised by the Federal Rules of Civil Procedure, as well as Kentucky's like rules. Rule 43(b) of the Federal Rules provides:

"(b) *Scope of Examination and Cross-Examination.* A party may interrogate any unwilling or hostile witness by leading questions. A party may call an adverse party or an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party also, and may be cross-examined by the adverse party only upon the subject matter of his examination in chief."

Dealing with the same subject, Rule 43.07 of the Kentucky rules provides:

"*Impeachment of Witnesses.* A witness may be impeached by any party, without regard to which party produced him, by contradictory evidence, by showing that he had made statements different from his present testimony, or by evidence that his general reputation for untruthfulness renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of a felony."

We are of the view that whether we employ one or the other, or both, of

the above rules, plaintiff's counsel should have been permitted to cross-examine and impeach the witness Keymon. The District Judge's position was that when Keymon was called, he was plaintiff's witness and would remain so until Keymon's *attitude on the stand* was demonstrative of hostility to plaintiff's case. Absent the special circumstances here, we would agree that resolution of a witness' hostility *vel non* would be a matter within the discretion of the trial judge. Such is a correct general rule. Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 179 (5th Cir.), cert. denied 375 U.S. 866, 84 S.Ct. 139, 11 L.Ed.2d 93 (1963); Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958, 970 (5th Cir. 1969).

It is with some reluctance that we find fault with the District Judge's ruling. This is so because of counsel's meager articulation of the bases for his claim of right to cross-examine witness Keymon. After a bare assertion that he was calling Keymon for cross-examination, and upon the first refusal to allow him to do so, counsel said:

> "This man was the pilot of the boat and an employee of the company at the time it occurred, sir, and inasmuch as he is obviously a hostile witness may we have the privilege of cross examining him?"

Later, when it appeared that Keymon's trial testimony was at odds with some statements made by him in a pretrial deposition, plaintiff's counsel said:

> "If he [counsel] is surprised by inconsistent statements of this witness as compared to statements made by the same witness prior to trial, that he is permitted to introduce for the purpose of affecting the credibility of that witness statements made before trial, and I cite Your Honor Barkley v. U. S., 319 F2d 217 (sic) which involved a tax case. And a more recent case of Journeyman Plasterers, et al., v. NLRB, 7 Cir., 341 F.2d 539, stating in effect that a witness who surprises his party calling him by giving testimony contrary to statements made prior to

the trial may be impeached by their statements made prior to trial."

■ After employing our opportunity for contemplative consideration of the matter, we are persuaded that the special facts of this case justify an inference of the hostility of the witness Keymon. The plaintiff's claim of negligence was bottomed on the conduct of Keymon. He was the tort-feasor if a tort was, in fact, committed. He could have been sued as the sole defendant, or jointly with the owners of the boat, who could be made to respond in damages only under the rule of *respondeat superior*. While not then in the employ of defendants, O. F. Shearer & Sons, Keymon's profession or occupation continued to be that of a river towboat pilot. His reputation as such, and his career, could be hurt by a finding of negligent operation of a river boat that resulted in death to a third party. We believe that all of this would permit his being recognized as a hostile witness within the meaning of the first sentence of Federal Rule 43(b). The language of that sentence, however, might limit the privilege to asking "leading questions." Nevertheless, we are persuaded that what plaintiff's counsel attempted as to the witness Keymon was permissible under the second sentence of Rule 43(b). This is so even though Keymon's demeanor on the witness stand would not be apparently hostile. Experienced advocates have all looked at the disarming and apparently friendly witness whose real purpose on the stand is to destroy the case which the examining counsel is trying to sustain. Even though plaintiff's attorney appeared to rely primarily on hostility as the basis for his efforts to impeach Keymon and to use his pretrial deposition, we think his efforts can be read as including reliance on Keymon's status as an "adverse party" and as a "managing agent" of defendant. He offered Keymon's entire pretrial deposition as an avowal. Whatever his choice of words, counsel in substance and effect invoked the second sentence of Rule 43(b). See Johnson v. Baltimore & O. R. R., 208 F.2d 633, 635 (3rd Cir. 1953); Chumbler

v. Alabama Power Co., 362 F.2d 161, 163 (5th Cir. 1966).

The circumstance that Keymon was not in the employ of defendant at trial time does not forbid his being treated and examined as an "adverse party" or "managing agent" of an adverse party. In Chumbler v. Alabama Power Co., 362 F.2d 161 (5th Cir. 1966), the Court said:

"The distinction between the first sentence of the Rule, [Rule 43(b)] which treats of unwilling or hostile witnesses, and the second sentence, dealing with adverse parties and others, was carefully drawn. Under the latter provision, the sole issue is whether the party sought to be called occupies an adverse position to the party seeking to call him. His presumed or actual hostility, or lack thereof, is irrelevant. So also the identity of the named party is irrelevant. The question is whether the party sought to be called could have been sued, either instead of the named defendant or as a codefendant. If so, and if the witness is an alleged tort-feasor, and if the standard for recovery would be the same whichever were sued, he is an adverse party within the meaning of Rule 43(b)." 362 F.2d at 163.

We held in Brandon v. Art Centre Hosp., 366 F.2d 369 (6th Cir. 1966) that, under the facts of that case, a particular doctor was neither an adverse party nor the managing agent of the hospital there involved. But we announced a general rule which is consonant with what we hold here. Other circuits have also so held. In Fall v. Esso Standard Oil Co., 297 F.2d 411 (5th Cir. 1961), the Court held that the "chief mate" was, under Rule 43(b), the managing agent for the owner of a vessel, he being in charge at the time of a casualty in the absence of the Master. In Sanford Bros. Boats, Inc. v. Vidrine, 412 F.2d 958 (5th Cir. 1969), the Court said:

"In the case at bar Captain Ammon contradicted his pretrial deposition on a number of points that were essential to plaintiff's action. We also note that while no longer in appellant's employ at the time of trial, Captain Ammon occupied a similar position with another company, engaged in similar operations and could reasonably be expected to identify with the interests of shipowners. A careful review of the Captain's testimony convinces us that permitting him to be questioned as an adverse party substantially met the demands of justice and vindicated the trial court's ruling." · 412 F.2d at 971.

The following from Skogen v. Dow Chemical Co., 375 F.2d 692 (8th Cir. 1967), has relevancy here:

"The courts, in determining who is a 'managing agent' within the terms of Rule 43(b), should not be too technical or literal in their approach and thus disqualify for cross-examination the only persons within the corporation who have knowledge of the subject matter of the litigation. The courts should view each case on an *ad hoc* basis and liberally apply the Rule to reach the demands of justice in each case. Krauss v. Erie R. Co., 16 F.R.D. 126 (S.D.N.Y.1954); Rubin v. General Tire & Rubber Co., 18 F.R.D. 51 (S.D.N.Y.1955)." 375 F.2d at 701.

In the foregoing discussion we have relied upon Federal Rule 43(b) for our support. Early in our opinion, we set out Rule 43.07 of the Kentucky Rules of Civil Procedure which provides that a party may impeach his own witness by evidence of prior statements inconsistent with his present testimony. Rule 43(a) of the Federal Rules requires the federal courts to admit all evidence that would be admissible under the rules in force in the forum state. Application of the Kentucky rule supports our holding.

*b) Admissibility of Keymon's deposition and plaintiff's expert testimony based thereon.*

■■ Critical parts of the deposition of plaintiff's expert, Captain Charles Wyatt Duncan, Jr., were denied admission because the hypothetical questions propounded to him assumed facts found

only in Keymon's discovery deposition which had been denied admission *in toto*. It is a general rule that facts assumed by an expert which are not within his personal knowledge must be supported by evidence from which a finding of the existence of such facts can be made. 8 Cyc.Fed.Proc. § 26.197, at 236 (Rev. Vol. 1968). Frequently the answer of an expert is admitted by a trial judge upon condition that the facts relied on be ultimately supported by admissible evidence. See 8 Cyc.Fed.Proc. § 26.197, at 237. The deposition of Captain Duncan contained answers whereby he expressed his expert view upon the good seamanship, or lack of it, in the conduct of the witness Keymon in navigating the towboat during the relevant period which preceded the drowning of young Melton. Some of the facts given him were contained only in Keymon's deposition, the existence of which facts was denied or repudiated when Keymon testified at the trial. Even though we hold Keymon's deposition was admissible for purposes of impeachment, to be used as a basis for expert opinion its relevant facts would have to be considered as substantive evidence. Troutman v. Mutual Life Ins. Co., 125 F.2d 769, 772 (6th Cir. 1942); Miller v. Watts, 436 S.W.2d 515, 521 (Ky. 1969); Kentucky Traction Co. & Terminal Co. v. Humphrey, 168 Ky. 611, 618–620, 182 S.W. 854 (1916). It is the law of Kentucky that out of court statements of a witness, once received in evidence under the Kentucky Rule, § 43.07, are not limited to impeachment purposes but are substantive evidence. Tri-City Van & Storage, Inc. v. Slone, 437 S.W.2d 211, 213 (Ky.1969). This Court, however, has adhered to the rule that earlier statements contrary to trial testimony are usable only for impeachment and not as substantive evidence. Green v. Baltimore & O. R. R., 337 F.2d 673, 675 (6th Cir. 1964); United States v. Duff, 332 F.2d 702, 706–707 (6th Cir. 1964); United States v. Crowder, 346 F.2d 1, 4 (6th Cir. 1964). We believe that the situation here should not be controlled by such general rule. For purposes of Rule 43

(a), we believe that the Kentucky rule relates to the *admissibility* of evidence, admitting as it does prior inconsistent statements as substantive evidence and *not merely* for impeachment.

■ Furthermore, we have said above that the witness Keymon as the sole tort-feasor, if there was tortious conduct, was in effect an adverse party vis-a-vis the plaintiff. A party's out of court statements, contrary to his trial testimony, become substantive evidence as admissions against interest. Vincent v. Young, 324 F.2d 266, 269 (10 Cir. 1963); McIntosh v. Eagle Fire Co., 325 F.2d 99, 100 (8th Cir. 1963); Schaible v. Uhl, 343 S.W.2d 578, 579 (Ky.1961); We hold that Keymon's deposition admissions which were contrary to his trial testimony could be used to provide factual basis for questions propounded to Captain Duncan.

### 2. Last clear chance.

Plaintiff requested that the jury be told that, applying the last clear chance doctrine, they could find the defendant liable, notwithstanding a finding that the operator of the flatboat was guilty of contributory negligence.

In McFall v. Tooke, 308 F.2d 617 (6th Cir. 1962), the writer of this opinion essayed analysis and exposition of this doctrine as it is contained in the substantive law of Kentucky. I employ here, again, the following protective preface:

"The doctrine of last clear chance has been described as a doctrine 'as to the basis or extent of which there has been little agreement and endless discussion * * *'. Prosser, Handbook of the Law of Torts, § 52, p. 291 (2d Ed., 1955.)" 308 F.2d at 623.

■ We have ordered a new trial in which there will be a more extensive examination of at least one of the two principal participants in the background events of this lawsuit. We think it best to refrain from now fixing rules for a record not yet made. Our *McFall* case recited the relevant law which had then been announced by the Kentucky courts.

More recent decisions have dealt primarily with pedestrians allegedly run down by motor vehicles. They provide little guidance here. See Riley v. Hornbuckle, 366 S.W.2d 304 (Ky.1963); Frank v. Silvers, 414 S.W.2d 887 (Ky.1967); Leger v. Watkins, 449 S.W.2d 423 (Ky.1970). We do, however, make these observations. It appears undisputed that the flatboat sank upon being swamped by stern waves from defendant's boat. To justify submission to the jury on last clear chance as overcoming any negligence in the operation of the flatboat, it must appear that the pilot of defendant's towboat discovered, or should have discovered, the flatboat's peril at a time when there remained opportunity to arrest the making of these stern waves, or at least to reduce their size, and thereby prevent the accident. The evidence is clear that the father, Melton, was at all relevant times fully attentive to what was going on. Therefore, there would be no occasion to fashion a last clear chance instruction regarding discovery of some inattention on the part of plaintiff father. The case of Monongahela River Consol. Coal & Coke Co. v. Lancaster's Adm'r, 169 Ky. 24, 183 S.W. 258 (1916), is cited by appellant to sustain his claim that last clear chance should have been submitted. It is not of controlling relevance but may be examined with profit for its jury instruction on the doctrine as applied to a case where a river steamboat ran down a rowboat.

### 3. Instructions.

Appellant charges error in the District Judge's failure to give the following instructions to the jury:

"Instruction No. 2.

"It was the duty of Defendant's boat operator, CLAUDE A. KEYMON, at the time and place mentioned in the evidence, to operate his said tow boat and barges so as to avoid danger of capsizing to other boats and craft on the river in the immediate area of his vessel, and that duty included the following duties:

\* \* \* \* \* \*

"B. To keep a look ahead for all other craft and boats on the river, or so near to Defendant's barges as to be in danger of capsizing by the waves, wake, or stern waves, produced by the Defendant's tow boat;

"C. To operate said tow boat and barges at a reasonable rate of speed, considering the use and conditions of the river at that time and place;

"D. To reduce the speed of the propellers of said tow boat if, in the exercise of ordinary care, it was apparent that the stern waves produced by said propellors would cause imminent danger of capsizing of the boat in which Plaintiff's decedent was riding.

\* \* \* \* \* \*

"H. If the danger of the boat in which Plaintiff's decedent was riding became apparent, then to give short and rapid blasts, at least four, constituting the danger signal."

The instructions given by the District Judge, in addition to the general definitions of negligence and due care, contained the following:

"Now, both the tugboat and the johnboat had the right to navigate on the Green River. But in so doing, the law imposes upon them certain legal duties, the violation of which would be a negligent act. It was the duty of the operator of the tugboat to exercise ordinary care, which I have defined for you, to operate its tugs so as not to swamp or capsize other boats navigating on the Green River at the time and place referred to in the evidence in this case, and that duty included the duty of sounding a warning by giving three distinct blasts of the boat whistle if because of the bend in the river or other causes an approaching craft could not be seen for a distance of six hundred yards."

We think the instructions given sufficiently encompassed appellant's quoted "B". No objection was made to the failure to instruct on "B", "C" or "D" and such failure cannot now be as-

signed as error. They can be reconsidered upon retrial. We will not now consider them. Fed.R.Civ.P. 51. Plaintiff was entitled to requested Instruction 2H. Whether this instruction will still be appropriate upon retrial can only be determined on the facts developed there.

The judgment of the District Court is reversed and the cause remanded to the District Court for the purpose of granting plaintiff a new trial.