460 So.2d 828 (1984)
Nora Faye HARRIS, Jerry K. Todd and Margie H. Todd
v.
BUXTON T.V., INC.
No. 55250.
Supreme Court of Mississippi.
November 28, 1984.
*829 Jon A. Swartzfager, Laurel, for appellants.
John Mark Weathers, George E. Dent, Aultman, Tyner, McNeese, Weathers & Gunn, Hattiesburg, for appellee.
Before PATTERSON, C.J. and DAN M. LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal follows a jury verdict in favor of Buxton T.V., Inc. whom Nora Faye Harris and others had sued seeking damages for injury to real property allegedly resulting from water drainage precipitated by improvements that Buxton had made to its adjoining upland property. On this appeal, we find two errors committed by the trial court: (1) his refusal of Harris' request to call as an adverse witness and ask leading questions of Buxton's building contractor who had made the improvements in Buxton's property; and (2) his failure correctly to instruct the jury regarding the standard of care by which Buxton's conduct should be judged. We reverse.

II.
In April or May of 1981, Buxton acquired certain real property in Laurel, Mississippi, and began improvements during June or July of that year. That property adjoined and was upland of certain developed real property owned by Nora Faye Harris, Jerry K. Todd and Margie H. Todd (hereinafter collectively "Harris"), Plaintiffs below and Appellants here.
The building already on the Buxton property was increased substantially in size and a paved parking lot was constructed. Buxton had no expectation as to how drainage from this property would occur. This matter *830 had been left to the contractors and engineers who performed the work. Indeed, Buxton was not aware of precisely what changes were made to its property as a result of the construction he had authorized. During the period of construction from June to October of 1981, Harris complained to Buxton that water from the Buxton property was coming on the Harris property.
On April 18, 1982, Harris commenced this action by filing a complaint in the Circuit Court of the Second Judicial District of Jones County, Mississippi. Since Buxton was unfamiliar and unknowledgeable regarding the specifics of the improvements that had been made to its property, Harris attempted at trial to call Joe Parker  who was Buxton's general contractor for the improvements made on the Buxton property  as an adverse witness and to cross-examine him regarding the improvements actually made. The basis for this request was that Parker was identified with Buxton and that Harris could not, and would not, vouch for this witness' credibility. The trial judge overruled Harris' request. Given this turn of events, Harris elected not to call Parker at all.
Several other witnesses were called regarding conditions on the Buxton property and the adjoining properties, as well as witnesses testifying as to engineering and construction practices. The testimony of all these witnesses is not relevant to the points raised here on appeal.
The only other aspect of this trial which is relevant to this appeal concerns two jury instructions: P-2 and D-18. In essence, Instruction P-2 told the jury that while a property owner has the right to alter his property, he may not do so to the detriment to other landowners and that if the jury found that the water drainage flow onto the Harris' property "either increased [`in volume' excised], velocity, intensity or concentration" then the verdict should be in favor of Harris. Instruction D-18, in contradistinction, told the jury that an "uphill" landowner is not liable to an adjoining landowner "even though the flow of water is accelerated or the volume increased" and so even if the jury found that Buxton had caused these detriments to Harris  the jury should nonetheless find in favor of Buxton.
After hearing the evidence and having been thus instructed, the jury after due deliberation found in favor of Buxton. From final judgment entered on the verdict, Harris appeals and presents two issues:

III.
Harris' first assignment of error is that the Circuit Court
"erred in not allowing the Plaintiffs [Harris, et al] to call the Defendant's contractor, Joe Parker, as a witness identified with an adverse party under Rule 43(b)(3) of the Mississippi Rules of Civil Procedure."
As the record makes clear, the thrust of Harris' complaint is that Buxton made some improvements or alterations upon the properties it occupied thus allegedly altering drainage patterns and causing excessive waters to be cast upon Harris' lower adjoining lands. Harris says that, prior to these improvements, there was no drainage problem on their property, but that after Buxton did his work on his property,
"the Plaintiffs have been caused to suffer severe flooding to their home and yards by rain water draining from Defendant's property."
In this context, Harris sought to call as a witness one Joe Parker. Harris' counsel stated to the court that Parker was the general contractor who actually made and performed the alterations to the property of which Harris was complaining. Harris' counsel invoked Rule 43(b)(3), Miss.R. Civ.P., and asked that he be allowed to ask the witness leading questions and that he not be required to vouch for Parker's credibility.
It is important that, prior to her efforts to call Parker, Harris had called Robert Earl Buxton, the corporate representative of Buxton T.V., Inc. as an adverse witness. *831 Buxton proceeded to testify that he had hired Joe Parker Construction Company to make certain renovations on an existing building on the property complained of by adding approximately 2,000 sq. ft. to an existing 1,200 sq. ft. building by doing certain paving on the back of the lot and other related work. Buxton further testified that he was not familiar with the manner in which his contractor had done the work, but rather he had hired a contractor to do a job and he turned the matter over to his contractor.
In this context it certainly appears that, if Buxton has any liability in the premises, that liability will be the substantial product of the acts or omissions of Joe Parker Construction Company. Joe Parker as the chief managing officer of that corporation is the individual Harris sought to call as a witness.
Parenthetically, had Buxton been determined to have liability in the premises, Buxton may well have had an indemnity claim over against Parker. If Harris had elected to do so he could have named Parker as a defendant in this action. Had that been done Buxton could procedurally have asserted its indemnity claim against Harris via a cross-claim under Rule 13(g), Miss.R. Civ.P.
In this context, we consider Rule 43(b)(3), Miss.R.Civ.P. The rule provides as follows:
(3) Leading Questions. Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse witness, or a witness identified with an adverse party, interrogation may be by leading questions. [Emphasis added]
(4) Who May Impeach. The credibility of a witness may be attacked by any party, including the party calling him.
This rule has an identical counterpart in Rule 611(c) of the Federal Rules of Evidence.
Rule 43(b)(3) is clear and unequivocable. In the context of the assignment of error before us, the rule provides that, when a party calls a witness identified with an adverse party, interrogation may be by leading questions. The meaning of this rule has been explicated in the official Comments which provide
"The final sentence deals with categories of witnesses automatically regarded and treated as hostile. Rule 43(b) of the Federal Rules of Civil Procedure has included only `an adverse party of an officer, director, or managing agent of a public or private corporation or of a partnership or association which is an adverse party.' This limitation virtually to persons whose statements would stand as admissions is believed to be an unduly narrow concept of those who may safely be regarded as hostile without further demonstration. The phrase of the rule, `witness identified with' an adverse party, is designed to enlarge the category of persons thus callable."
The comment, as well as the express language of the rule, make it clear that Rule 43(b)(3) is broader than its former counterpart in the Federal Rules of Civil Procedure. The matter is of no moment for, as we have noted above, Rule 611(c) of the Federal Rules of Evidence contains a sentence identical to that in question here.
Since the adoption of Rule 611, Fed.R.Ev. in 1975, there has been precious little litigation concerning the issue of who may be considered as "identified with an adverse party". There are only two decisions emanating from United States Courts of Appeals which address this issue: Ellis v. City of Chicago, 667 F.2d 606 (7th Cir.1981) and Perkins v. Volkswagen of America, Inc., 596 F.2d 681 (5th Cir.1979). The holding of these cases can be summarized as follows:
Before the adoption of Rule 611(c), the use of leading questions on direct examination required either a showing of actual hostility or a determination that the witness being examined was an adverse party, or an officer, director, or managing *832 agent of such an adverse party. [citations omitted]
These limitations were designed to guard against the risk of improper suggestion inherent in examining friendly witnesses through the use of leading questions. [citations omitted]
The drafters of Rule 611(c), however, determined that these limitations represented "an unduly narrow concept of those who may safely be regarded as hostile without further demonstration." [citation omitted] The new rule was thus designed to enlarge the categories of witnesses automatically regarded as adverse, and therefore subject to interrogation by leading questions without further showing of actual hostility.
 Ellis, 667 F.2d at 612-13; see also Perkins, 596 F.2d at 682 (trial court's failure to allow a mere employee of a corporation to be regarded as "identified with the corporation" was incorrect)
It is significant to note that cases dealing with this issue under the more narrow strictures of Rule 43(b), Fed.R.Civ.P.  prior to the adoption of Evidence Rule 611  had attempted to read that rule in a more practical and sensible manner:
We believe that this situation demands a liberal construction of the Rules that takes into account the practicalities of the business world, the litigation which the business world must face and the underlying rationale of the rule. As the demands of litigation change with time, the law should make every attempt to accommodate this change to effect the modern demands of justice. The courts in determining who is a "managing agent" within the terms of Rule 43(b), should not be too technical or literal in their approach and thus disqualify for cross-examination the only persons within the corporation who have knowledge of the subject matter of the litigation. The court should view each case on an ad hoc basis and liberally apply the Rule to reach the demands of justice in each case. [citations omitted]
 Skogen v. Dow Chemical Co., 375 F.2d 692, 701 (8th Cir.1967); see Sanford Brothers Boats, Inc. v. Vidrine, 412 F.2d 958, 970-71 (5th Cir.1969) (citing Skogen, former employee who was no longer employed by the company "could reasonably be expected to identify with the interests" of the company); see also Jones v. John Hancock Mutual Life Insurance Co., 416 F.2d 829, 830, 833 (6th Cir.1969) (independent insurance agent identified with the interests of John Hancock); Fall v. Esso Standard Oil Co., 297 F.2d 411, 417 (5th Cir.1961) (chief mate on ship identified with the interests of the ship owner and against the interests of a seaman).
Even though decided under the more stringent Federal Rule 43(b), the case of Melton v. O.F. Shearer & Sons, Inc., 436 F.2d 22 (6th Cir.1970), is most instructive. Keep in mind the facts of this case: Joe Parker was the managing officer of the general contractor who performed the improvements and alterations on the Buxton property alleged to have caused the water drainage damage to Harris. Compare this situation to that present in Melton:
After employing our opportunity for contemplative consideration of the matter, we are persuaded that the special facts of this case justify an inference of the hostility of the witness Keymon. The plaintiff's claim of negligence was bottomed on the conduct of Keymon. He was the tort-feasor if a tort was, in fact, committed. He could have been sued as the sole defendant, or jointly with the owners of the boat, who could be made to respond in damages only under the rule of respondeat superior. While not then in the employ of the defendants, O.F. Shearer & Sons, Keymon's profession or occupation continued to be that of a river towboat pilot. His reputation as such, and his career, could be hurt by a finding of negligent operation of a riverboat that resulted in death to a third party. We believe that all this would permit his being recognized as a hostile witness within the meaning of the first sentence of Federal Rule 43(b).

*833  Melton, 436 F.2d at 26.
Joe Parker is obviously in a situation very analogous to that of Keymon. At the very least, his business reputation is on the line. Arguably, Harris could have sued Parker along with Buxton. If the breach of a duty owed Harris in fact occurred, Parker was in fact the villian. Especially given the fact that Parker would appear to be "identified with the adverse party" (Buxton) even under the far stricter old federal Rule 43(b), it follows a fortiori that he easily meets the criteria for being regarded as an adverse witness under the new Federal Rule 611 and hence under Mississippi Rule 43(b)(3)  both of which are far broader and embody a more relaxed standard.
In sum, the test for determining how closely the witness must be identified with the adverse party before he falls within that rule is variously stated:
(1) If the witness' acts or omissions are the predicate for a party's claim or defense, that is, if in a case such as this under the plaintiff's theory of the case the defendant is subject to potential liability in substantial part not just because of his own actions but because of the actions or omissions of the witness in question, then that witness is ordinarily sufficiently identified with an adverse party and may be called as an adverse witness and interrogated by leading questions.
(2) If the conduct of the witness plays such an integral part in the transaction or occurrence which is the subject of the action and which gives rise to the defendant's potential liability, so that the defendant, if the plaintiff's primary original claim is successful, would have prima facie a claim for indemnity over against the witness, then again the witness is said to be sufficiently identified with the adverse party so that the witness may be called as an adverse witness and cross-examined.
The rule, of course, is a two-way street. A defendant or any other party may call a witness identified with a plaintiff or any other party and interrogation may be by leading questions.
When a party invokes the "identified with an adverse party" prong of Rule 43(b)(3), the trial judge's responsibility is to determine from the facts and circumstances of the case whether the witness proposed to be called is one who is identified with the adverse party within the meaning and contemplation of the rule. In the case at bar, however, the trial judge undertook no such inquiry. Indeed, when confronted with Plaintiffs' request, the trial judge's ruling was simply "overruled". All of this was error.
In an attempt to salvage the situation, Buxton argues here that the rule is discretionary. Buxton points to the language of the rule which provides that, when a party calls a witness identified with an adverse party, "interrogation may be by leading questions". (Insofar as we can ascertain, Buxton here impliedly concedes that Parker is a witness identified with an adverse party, as, indeed, it must.) It is certainly true that the word "may" ordinarily contemplates a discretionary situation. Buxton misreads the rule, however, in perceiving that the discretion is vested with the trial judge. Whether the witness will be asked leading questions is a matter primarily within the discretion of the party calling the witness. The trial judge's discretion is limited to assuring that a party is not allowed to examine by leading questions a witness adverse within Rule 43(b)(3) but in fact quite friendly.
Buxton further complains that the point has not been preserved because Harris made no proffer of what the testimony through Parker would have been. Generally, when a party seeks to offer evidence which in turn is excluded by the trial court, before we will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration. In Re Estate of Bowen, 234 So.2d 51, 52-53 (Miss. 1970); Martin v. Wadlington, 337 So.2d 706, 708 (Miss. 1976). This general rule has no application, however, when a party is improperly denied a right of cross-examination. As a matter of common sense, the party would seldom know precisely *834 what cross-examination would reveal.
Finally, we note that a problem generically similar to that we confront here was considered recently by this Court in Moffett v. State, 456 So.2d 714 (Miss. 1984). Moffett was a criminal case. We there held that the state, upon calling a witness who was friendly to the defendant, was not allowed to cross-examine that witness. We further held that the state vouched for the credibility of the witnesses it called, as does the defendant in a criminal case. Moffett recognized that the voucher rule and the prohibition on cross-examination of one's own witness have been widely critized and further recognized that the rule had been abandoned in this state in civil cases by virtue of Rule 43(b). The rule was enforced in Moffett because that was a criminal case which was not within the scope of Rule 43(b). Dicta in Moffett made it clear, however, that had Moffett been a civil case, the outcome would have been different.
Whether or not the trial judge's ruling in the case at bar that Parker could not be interrogated by leading questions should, standing alone, constitute reversible error need not be addressed here since, as will presently appear, there was a second error committed in the trial court in that the jury was not properly instructed as to the law.

IV.
Harris' second assignment of error is that
"the Court erred in granting Defendant's Instruction Number D-18".
Instruction D-18 states Buxton's theory of the case. It reads as follows:
INSTRUCTION TO THE JURY NO. D-18
The Court instructs the Jury that under the law an upper landowner has a right to make reasonable use of his or her property and may make certain improvements thereon under certain circumstances without liability to the lower landowners.
The Court further instructs the Jury that should you find from a preponderance of the evidence in this case, if any, that the property of the Defendant, Buxton T.V., Inc., is uphill from the property of the Plaintiffs; that drainage and rainwater naturally drains from the property of the Defendant, Buxton T.V., Inc., toward the property of the Plaintiffs, across the land of the Plaintiffs and into a ditch or creek which runs along the border of the Plaintiffs' property; that such drainage pattern is natural and has existed for a number of years; and that the Defendant, in adding onto its property and in paving a portion of the property for use as a parking lot and driveway, did not cause more or additional water to flow across the land of the Plaintiffs; that the construction did not change the grade of the Defendant's property nor the natural fall of the land; and although a portion of the Defendant's property was paved that the rainwater and drainage water still flows in the same direction and naturally across the Plaintiffs' property and into the adjacent creek; and that the Defendant did not change the course of the water in connection with any of the construction nor present occupants of the premises; then in that event, the Defendant is not liable to the Plaintiffs even though the flow of water is accelerated or the volume increased and should you so find, the verdict should be in favor of the Defendant, Buxton T.V., Inc. [Emphasis supplied]
An initial problem arises from the fact that Instruction D-18, and particularly the language emphasized above, appears wholly contradictory with language in Instruction P-2 granted at the request of Harris. D-18 instructs the jury that Buxton is not liable even though the flow of water "is accelerated or the volume increased", while P-2 instructs the jury that Buxton is liable for an increase in "velocity, intensity or concentration". Our paramount concern is, however, not the contradictory nature of these two instructions, for we have concluded that neither instruction correctly states the law.
*835 The law regarding water drainage from one property owner's land onto adjoining parcels is summarized and distilled in Hall v. Wood, 443 So.2d 834 (Miss. 1983):
An upper landowner may without fear put his lands to reasonable uses even though as a proximate result thereof waters harm lower landowners, provided the harm is not unreasonable or unnecessarily severe. [....]
An upper landowner may increase the flow of water via drainage incident to the reasonable development of his property even though it does some damage to the lower landowner. Water by its nature confers burdens as well as benefits. These burdens our law requires to be shared equitably.
From the vantage point of the owner of lower lands, the law is complementary. In diverting waters from his lands, any owner must use reasonable care to prevent unnecessary injury to adjoining landowners.
Applying these principles, we hold that the upper landowners such as Hall are entitled to make reasonable use of their land. Where there is reasonable likelihood of damage to property of lower landowners, however, upper landowners are required to do whatever is reasonable to minimize the damage. The fact that some damage nevertheless occurs to the lower landowners does not render the upper landowner liable. On the other hand, where the upper landowner has done nothing in an effort to ameliorate the adverse effect on local landowners where there are ameliorative steps which reasonably could have been taken, and where the damage is in fact substantial, and further where the development activities of the upper landowner are a major proximate cause of that damage, the lower landowners are entitled to damages and/or injunctive relief as may be appropriate.
 Hall v. Wood, 443 So.2d at 838-40; see also Georgia Pacific Corp. v. Armstrong, 451 So.2d 201, 205-06 (Miss. 1984) (Hall standard applies to lower landowners as well).
In essence, Hall v. Wood declares that an upper landowner has a duty to act reasonably (a) in anticipating damage that may occur to lower landowners as a result of the upper landowner altering his property and (b) in taking such ameliorative steps as may be reasonably necessary or appropriate to assure that the lower landowner is not burdened inequitably. Under Hall v. Wood, when an upper landowner fails to act as a reasonable, prudent landowner to safeguard the correlative interests of his neighbors, he is liable to his neighbors for damages caused by his unreasonable and inequitable behavior.
A correct jury instruction may properly include the various factual elements in Instruction D-18. It must, however, in the end be couched so as to pose to the jury the question of whether the upper landowner acted "reasonably" to minimize detriment to neighbors. Since neither P-2 nor D-18 required that the jury determine the reasonableness vel non of Buxton's conduct given the facts and circumstances of the case, reversal is required. On remand the Circuit Court is directed to instruct the jury as to the proper standard for evaluating Buxton's conduct.
REVERSED AND REMANDED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.