REBER v. ILLINOIS CENT. R. Co. et al.

(Division B. Jan. 4, 1932.)

[138 So. 574. No. 29599.]

886

Watkins, Watkins & Eager, of Jackson, for appellant.

May, Sanders, McLaurin & Byrd, of Jackson, and Burch, Minor & McKay, of Memphis, Tenn., for appellees.

Argued orally by **W. H. Watkins, Jr.**, for appellant, and by **J. L. Byrd**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant filed his bill in this cause in the chancery court of Hinds county against appellees, the Illinois Central and Yazoo & Mississippi Valley Railroad Companies, for an injunction to abate an alleged nuisance,

the roundhouse owned and operated by appellees in conjunction with their railroad business, located about two miles north of the city of Jackson; and to recover actual and punitive damages claimed to have been suffered by appellant because of the existence of such nuisance. Appellees in their answer admitted the ownership and operation of the roundhouse, but denied that its use and operation constituted a nuisance. There was a trial on bill, answer, and proofs, resulting in a final decree dismissing appellant's bill, from which decree this appeal is prosecuted.

In 1914 the Illinois Central Railroad Company moved its roundhouse from where it was then located, near the present passenger depot in the city of Jackson, about two miles north, to its present location, which at that time was outside of the city limits. The removal was made in order to prevent the roundhouse from becoming a nuisance, and to obtain more room for increasing operations. When the removal took place, there were no residences near the new site, except one owned by the Jackson Fertilizer Factory, located on its property; and one on the west side of the railroad, owned by a lumber company—the latter has since been removed.

The Jackson Fertilizer Company's plant is located on a seventy-five-acre tract of land north of the roundhouse. Appellant's residence is owned by the Jackson Fertilizer Company, and is located on its property, between its plant and the roundhouse. The fertilizer plant is north of the residence occupied by appellant, and the roundhouse is south of it. The chancellor found as a fact in his opinion (made a part of the record in this cause) that the residence occupied by appellant is something over six hundred feet north of the roundhouse, and about five hundred feet south of the smoke and gas stacks of the Fertilizer Company. The roundhouse consists of a brick structure one story high, about ninety-eight feet in depth, made up of three sections, and is what is known

as a five-stall roundhouse, which means that it has the capacity to store five locomotive engines. On the outside there are ten tracks west of the roundhouse, and three on the east. The roundhouse is used for storing locomotive engines, and for making running repairs thereon, and for firing up the engines before they are started out. Connected with the roundhouse is a boiler room, containing a boiler, which has a smoke stack about one hundred feet high, which generates steam for use in the roundhouse.

Appellant alleges in his bill that a great volume of smoke was created by the engines at the roundhouse, which permeated the atmosphere, and was carried by the wind to his residence, greatly injuring his household goods, and injuring and destroying his shrubs and fruit trees and garden; that the noise at the roundhouse was very great, and disturbing and annoying in the daytime and the nighttime, and on Sundays; that at night the light from the headlights of engines parked on the tracks at the roundhouse were cast on and into his house, and made sleeping difficult; that dust, soot, and cinders caused by the operations were carried to his residence; that such surroundings made living conditions for himself and his family unbearable; and that in recent years the operations at the roundhouse had greatly increased.

The evidence on behalf of appellant tended to establish the allegations of his bill.

The evidence on behalf of appellees either established without conflict, or tended to establish, the following facts: That the residence occupied by appellant is the property of the Jackson Fertilizer Company; that appellant is, and has been for a long time, an employee of that company, and occupies his residence without charge from the Fertilizer Company, or rather as part of the compensation for his services; that the use of the roundhouse by appellee, from the time of its construction in 1914, gradually increased until 1927, at which time it

began to decline; and at the time of the trial the amount of smoke created at the roundhouse had decreased probably fifty per cent from what it was in 1927; that the roundhouse was properly constructed; was operated carefully with a view to eliminating as much smoke as possible; that it was operated just as all roundhouses are operated by other railroads in this country; that it is a standard roundhouse; that there is practically no repair work done there; that no boiler work is done at night; and there is less firing of engines now than there had been prior to 1927, and this was constantly decreasing; that the roundhouse is located in a factory district, being surrounded by manufacturing plants, such as the Fertilizer Factory and wood-working plants. And on the east side of appellant's residence is the main line of the Illinois Central Railroad, over which there pass daily large numbers of freight and passenger trains; that to the southwest of the residence of appellant is located the main line of the Yazoo & Mississippi Valley Railroad from Jackson to Yazoo City, whose passing engines create smoke and noise; that the whole seventy-five-acre tract of land owned by the Jackson Fertilizer Company has on it only two residences, one occupied by appellant, and the other vacant; that the Fertilizer Company has a smoke stack and a gas stack; that, when the wind is from the south, smoke blows from the roundhouse to the residence occupied by appellant, and, when the wind is from the north or the east, smoke and gas from the stacks of the Fertilizer Company and from the trains of the Railroad Company blow over and into his residence; that the residence occupied by the appellant is located about five hundred feet south of the gas stack of the Fertilizer Company, and some further south of the smoke stack of that company; that from the plant of the Fertilizer Company, through what is known as an acid stack, there is emitted a continuous flow of sulphuric acid fumes, which permeate the atmosphere to a great dis-

tance, extending to and invading, not only the residence of appellant, but the roundhouse of appellee; that appellant is employed by the Fertilizer Company from week to week, as stated, the occupation of the residence being part of his compensation—his employment is for no definite time.

Among the findings of fact in the chancellor's opinion are the following: That, when the wind is from the south, the smoke from the roundhouse goes over and upon the residence occupied by appellant; while, if from the north, the smoke and gas from the fertilizer plant does the same thing; that the smoke stack at the fertilizer plant is more than three feet in diameter, and carries the smoke from several tons of coal each day; that the gas stack is more than a foot in width, and pours out a volume of sulphuric acid gas continually; that the smoke from the roundhouse has nothing to do with the killing of the appellant's fruit trees, shrubs, and garden; that the territory in which the roundhouse and Fertilizer Factory are located is a factory district, "fringed about with scattered residences at comparatively remote and undistributed distances," with the exception of the residence occupied by appellant; that the other residences are too remote from the district to suffer any annoyance from the operation of the roundhouse or Fertilizer Factory; that the locality is what is commonly known as a factory district, and is more exclusively a place of that character than any other area in or about the city of Jackson; that it is a locality in which no one of the industrial concerns there in operation could reasonably complain of the legitimate operation of any other.

The chancellor's conclusion from the evidence was that the roundhouse of appellees was neither a nuisance per se nor a nuisance in fact. We think the chancellor's findings of fact were amply justified by the evidence. The only question is whether or not the controlling legal principles were applied to the facts. Clearly, the opera-

tion of a roundhouse by appellee is a legitimate business, carried on in a lawful manner; therefore it is not a nuisance per se. We do not understand that appellant contends that it is a nuisance per se. The question is whether, under the law, it is a nuisance in fact. A lawful business may be carried on in such a manner as to become a nuisance in fact, subject to be abated by injunctive relief.

Appellant contends that, where smoke, soot, and cinders are emitted on to the property of another in such quantities as to materially interfere with the comfort, convenience, and well being of a person of ordinary sensibilities, there is a nuisance in fact; and that the injured person has the right to have such nuisance abated by injunction; and also that noises and other elements of such character, made at such times as to be a source of actual physical discomfort to a person of ordinary sensibilities, may be abated by the injured person.

As to whether the operation of a lawful business is a nuisance in fact depends upon the surrounding facts and circumstances, each particular case is to be determined very largely by its own facts. A fair test as to whether a business, lawful in itself, constitutes a nuisance, is the reasonableness or unreasonableness of conducting the business complained of in the particular locality, and under the circumstances of the case; and, where the use of the property is not unreasonable, it will not, as a rule, be enjoined, nor can a person complaining thereof recover damages. The locality is to be considered in determining whether there is a nuisance—what might be a nuisance in one locality might not be such in another. Thus, a business might be perfectly proper in a business or manufacturing territory, and a nuisance when carried on in a residential section; "and conversely, a business which, with its incidents, might well be considered a nuisance in the residential portion of a city or village. may be proof against complaint where conducted in a

business or manufacturing locality." The law of private nuisances is a law of degree, and usually turns on a question of fact, whether the use is unreasonable or not, under all the circumstances. There is no hard and fast controlling rule; for the use under one set of facts might be reasonable, and unreasonable under another. "Whether the use of property to carry on a lawful business which creates smoke or noxious gases in excessive quantities amounts to a nuisance, depends on the facts of each particular case." Which facts are often "many and varied, such as location, nature of the use, character of the neighborhood, extent and frequency of the injury, the effect on the enjoyment of life, health and property and the like."

In theory, every person has the natural right to have air distributed over his premises in its natural state, free from all artificial impurities. "If this rule were literally applied its application would seriously disturb business, commerce and society itself. Hence, by air in its natural state, and free from artificial impurities, is meant pure air, consistent with the character and nature of the community."

An injunction to restrain a lawful business, on the ground that it was so conducted as to render it a nuisance, should never be granted, unless a clear legal right has been invaded, resulting in permanent and serious injury, which cannot be adequately redressed by an action at law. And especially is this true when the allowance of the writ of injunction will inflict upon the defendant a much more serious injury than the complainant has sustained. 29 Cyc. 1156, 1157; 20 R. C. L. 444 et seq.; McCarty v. Natural Carbonic Gas Co., 189 N. Y. 40, 81 N. E. 549, 13 L. R. A. (N. S.) 465, 12 Ann. Cas. 840; Holman v. Athens Empire Laundry Co., 149 Ga. 345, 100 S. E. 207, 6 A. L. R. 1564; Demarest v. Hardham, 34 N. J. Eq. 469; Patterson v. Roxana Petroleum Co., 109 Okla. 89, 234 P. 713; Oliver v. Forney Cotton Oil

& Ginning Co. (Tex. Civ. App.), 226 S. W. 1094; Gilbert v. Showerman, 23 Mich. 448.

The public welfare requires that industry have some abode where it can function freely and without molestation. The evidence shows that appellee selected the present site of their roundhouse with that end in view. The locality was then, and now is, exclusively an area occupied by industrial plants, with the exception of the residence occupied by appellant. The question is: Can appellant, under the law, drive appellee's roundhouse away, and on to a new site, at an expense, probably of several hundred thousand dollars, when the former could move out of the district, away from the inconveniences of which he complains, at an expense infinitesimal as compared to the expense of removing the roundhouse. We think not.

Neither Robertson v. N. O. & G. N. R. Co., 158 Miss. 24, 129 So. 100, nor Buckeye Cotton Oil Co. v. Ragland, 11 F. (2d) 231 (C. C. A. 5 Cir.), is authority for appellant's contention. In the Robertson case the railroad yards and switching operations came after Robertson constructed his home; and, furthermore, his home was in a residential section. In the Ragland case the court took particular pains to stress the fact that the Buckeye Cotton Oil Company was not located in a district used, exclusively for manufacturing purposes.

Upon another ground we are of opinion that appellant is not entitled to injunctive relief: If the roundhouse were a nuisance, in fact, appellant has no such estate in the residence occupied by him as would entitle him to such relief. The chancellor's opinion, we think, lays down the correct rule as to the character of the estate the complainant must have to entitle him to injunctive relief against a nuisance. We do not think we can do better than to adopt that part of his opinion as the opinion of this court, which follows:

"The complainant here owns no interest in the real property affected. He is not even a lessee. Nor is he a tenant in the legal sense of the term. He is a mere employee occupant at will, a weekly wage earner, occupying the house as an incident to his employment, and as a part of the compensation in consideration of his services. A person must have some estate, be it ever so little, such as that of a tenant at will, or on sufferance, to be a tenant. Occupation as servant, or licensee, does not make one a tenant. Presby v. Benjamin, 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317.

"Can such an occupant, irrespective of locality, have defendant's roundhouse removed for his personal convenience when he cannot determine to any particular day the absolute right of his own possession? Can he have restrictive process on a quasi-public utility, when his own possession is contingent on his employment measured by mutual assent, and satisfactory service, from week to week? The house is the property of the employer, and the tenant no more in law than a mere licensee. Before injunctive process could affect more than restricting, or suspension, of defendant's operations, at great inconvenience and loss to itself, the employment and occupancy, or either, might cease, and the defendant be irremediably damaged upon the mere possibility of the continuance of a status which is supported by neither title nor contract. That a tenant in possession, or a lessee, for a term, or at will, might have damages at law for a private nuisance, where the right is clear, may be conceded, but the inquiry is always whether the conditions are such as to distinguish the complainant as one within the particular class. It seems to me that it ought to be fundamental that no mere occupant can recover if the owner cannot recover for injuries of like character resulting to his property. If this view be not correct, the rule of 'locality' affords no definite protection to any industrial enterprise, or public utility, where-

ever located. All that would be required to suppress one, and perhaps to destroy it, would be for an employee of a similar establishment to be at home on its premises in the same locality, and to complain of annoyance as a result of the operations of its neighbor or its competitor.''

Affirmed.