493 So.2d 955 (1986)
The MARYLAND CASUALTY COMPANY
v.
The CITY OF JACKSON, Mississippi.
No. 55,976.
Supreme Court of Mississippi.
August 27, 1986.
Rehearing Denied September 24, 1986.
*956 Robert S. Murphree, Jackson, for appellant.
Matthew M. Moore, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
Frozen pipes and either uninterrupted or unauthorizedly restored water service that should have been discontinued combined to produce extensive water damage in an unoccupied Jackson dwelling and have generated this subrogation action against the City of Jackson.
Following a jury verdict for the City, the insurer subrogee appeals raising several procedural points as well as a question regarding the nature and extent of the City's duty in the premises. Finding no reversible error, we affirm.

II.
George J. Carr was an insured of the Maryland Casualty Company under a homeowner's insurance policy issued to cover a dwelling at 368 Queen Juliana Lane, Jackson, Mississippi. The policy was in effect in 1981 and 1982. In June of 1981 Carr moved out of the house and began trying to sell it. In August of 1981 Carr telephoned the City of Jackson's Water and Sewer Business Administration Office and requested that water service be discontinued at 368 Queen Juliana Lane. As a result of this call, it appears that the City issued a work order to make the water cutoff and that this was performed on August 14, 1981, by two City employees, Jerry Robey and Kenneth Wayne Johnson. A final bill was sent to Carr on August 17, 1981, on which it was noted that his water service had been terminated.
Prior to this time Carr had shut the cutoff valves under the sinks and commodes in his house.
Over the next several months Carr periodically checked his house. He made no attempt to check the water pressure but nothing rendered him aware that there was any potential hazard with respect to water service in his house.
January 1982 was an extremely cold month in Jackson. Carr was ill during this time and the next opportunity he had to check the house was on February 6, 1982. When he entered the house on that occasion Carr found a tremendous amount of water damage, apparently the result of pipes having burst in the ceiling of the house. The water was still running. Carr went to the City's water meter box outside and discovered that the valve was open. According to Carr, he could not see the glass on the meter face because it was *957 covered with debris. He used a screwdriver to dig through the dirt and debris and finally reached the cutoff valve. With the assistance of his son-in-law, Jerry Davis, Carr closed the valve and this stopped the flow of water into the house.
Carr subsequently filed a claim with his insurer, Maryland Casualty Company. Maryland Casualty paid Carr $18,516.18, an amount all agree represents the reasonable and necessary cost of repairs to the house necessitated by the water damage.
As a part of the settlement of Carr's claim, Maryland Casualty took a subrogation agreement which in effect assigned to it any rights Carr may have had against third parties. Pursuant thereto, Maryland Casualty, on June 14, 1982, commenced the instant civil action by filing its complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, naming the City of Jackson as Defendant. See Rule 17(b), Miss.R.Civ.P. Maryland Casualty charged that the City had been negligent in its duties to terminate water service to the Carr dwelling and that this negligence had proximately caused the $18,516.18 loss.
After various pre-trial proceedings, including discovery, the matter was called for trial on May 30, 1984, at the conclusion of which the jury returned a verdict for the Defendant, City of Jackson. Following denial of its motion for a new trial, Maryland Casualty perfected the instant appeal where the matter is now ripe for review.

III.
Maryland Casualty first argues that the Circuit Court erred in refusing to allow its counsel to cross-examine and otherwise treat as an adverse witness Jerry Sills, the superintendent of the meter reading department for the City of Jackson.
Maryland Casualty called Sills as a witness and established that he had been employed by the Jackson City Water Department for 16 years and that he was at present Superintendent of Meter Reading and Service Connections. After covering several uncontroversial points regarding procedures in the City Water Department, Sills was asked a leading question to which counsel for the City of Jackson objected. The Circuit Court sustained the objection on grounds that the witness had not been shown "hostile". Maryland Casualty's position was that "he's a City employee". Thereafter, counsel for Maryland Casualty sought to cross-examine Sills regarding some alleged discrepancies between Sills' testimony at trial and answers the City of Jackson had filed in response to pre-trial interrogatories. After initially sustaining this objection, the Circuit Court allowed cross-examination.
On appeal, Maryland Casualty argues that it was improperly prohibited from cross-examination of Sills and that this ruling had the effect of preventing it from calling other City employees. This, we are urged, radically affected Maryland's trial strategy resulting in sufficient prejudice to require reversal.
We think it clear at the outset that Sills was a person whom, under ordinary circumstances, Maryland Casualty had the right to cross-examine. The matter is controlled by Rule 43(b)(3), Miss.R.Civ.P., which at the time provided that a party might call as a witness one identified with an adverse party and then examine that witness by leading questions.[1]See Harris v. Buxton T.V., Inc., 460 So.2d 828, 831 (Miss. 1984). As the Superintendent of the Meter Reading Division of the City's Water Department, Sills was a person identified with an adverse party, that adverse party, of course, being the City of Jackson. To the extent that the Circuit Court may have prohibited Maryland Casualty from treating Sills as an adverse witness, it erred.
*958 A review of the record, however, makes clear that the extent of this error was modest. Following the Circuit Court's original ruling, counsel for Maryland Casualty over the next two and a half pages managed to get off three clearly leading questions to which no objection was made. Then, with respect to the City's answers to interrogatories, the Court ultimately ruled, "I'll permit you on this point to go ahead and cross-examine him." Sills' testimony lasts only three pages longer in the record, during the course of which cross-examination was extensively allowed.
In sum, following his original rebuff at the hands of the Circuit Court, counsel for Maryland Casualty was able to cross-examine the witness for most of the remainder of the witness' testimony. It is true that we have held that it need not be shown what the witness would have said in response to the leading questions in order to preserve the point for appeal. Horne v. State, 487 So.2d 213, 216 (Miss. 1986); Harris v. Buxton T.V., Inc., 460 So.2d 828, 833-34 (Miss. 1984). Where, however, as here, counsel goes ahead and manages either without objection or with permission of the trial court to conduct modest cross-examination, it is difficult to say that the trial judge's original error was such that it affected a substantial right of the party. See Rule 103(a), Miss.R.Ev.; Rule 11, Miss. Sup.Ct. Rules.
As noted above, Maryland Casualty argues in its brief that it had planned to call "other supervisory employees of the defendant as adverse witnesses" and "to aggressively attack the Defendant's supervisory employees". We have from this record not the slightest clue who those witnesses were or even that they exist, as none was proffered. Leniency in allowing preservation of such a point for appeal does not extend so far as Maryland Casualty would have it. Before we would entertain such a point the party must in the trial record do something which makes clear that the point made in the subsequent brief is not just so much lawyer talk.
This assignment of error is denied.

IV.
Maryland Casualty next assigns as error the Circuit Court's denial of its motion to strike the testimony of the City's witness, Kenneth Wayne Johnson, whose name was not disclosed in answers to discovery.
The record reflects that prior to trial Maryland Casualty propounded certain interrogatories to the City of Jackson, Interrogatory No. 1 of which reads as follows:
Please state the names, addresses, home telephone numbers of all of the defendant's employees who performed work on or in any (way) serviced the water supply system of George J. Carr and Byrdie E. Carr at 368 Queen Juliana Lane, Jackson, Mississippi, from June, 1981 until the present.
Following up Interrogatory 1, Interrogatory No. 2 propounded to the defendant stated as follows:
In regard to the answer to Interrogatory No. 1 please state the date that each type of service was performed, the name of the employee performing it, and the nature of the service performed.
The City combined its response to Interrogatory No. 1 and 2 into one joint answer, and this answer read as follows:

On August 14, 1981, Jerry Robey turned off the water meter at 368 Queen Juliana Lane. (Emphasis supplied) Jerry Robey turned on the water meter on April 2, 1982, at that address and on May 11, 1982, Dwayne Martin turned off the water and pulled the meter at that address. The home address of Jerry Robey is 1103 Crawford Street, Jackson, Mississippi and his phone number is 981-7608. The home address of Dwayne Martin is 1620 Jones Avenue, Jackson, Mississippi.
The name of Kenneth Wayne Johnson is not disclosed. A party may be required to disclose the name of occurrence witnesses in answers to Rule 33 interrogatories or other forms of discovery. Anchor Coatings, Inc. v. Marine Industrial Residential Insulation, Inc., 490 So.2d *959 1210, 1218 (Miss. 1986); Ladner v. Ladner, 436 So.2d 1366, 1371-72 (Miss. 1983). Where after answers have been given a party discovers the names of new witnesses, there is a duty to supplement discovery responses. Anchor Coatings, Inc. v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210, 1218 (Miss. 1986); Denman v. Hardy, 437 So.2d 426, 428 (Miss. 1983); Square D Company v. Edwards, 419 So.2d 1327, 1329 (Miss. 1982). Where the name of a witness ought to have been disclosed but wasn't, ordinarily the witness will be precluded from testifying. Clark v. Mississippi Power Company, 372 So.2d 1077 (Miss. 1979).
Resort to these general principles does not carry us far in the present case. We say this, assuming arguendo that Johnson should not have been permitted to testify as an occurrence witness to facts related to his working on or in any way servicing the water supply system at the Carr residence. We have carefully reviewed Johnson's direct testimony as a witness for the City and do not find that he testified as an occurrence witness. Rather, what  and all  Johnson does on direct examination is to explain the City's procedures for handling service calls, including, of course, disconnection calls. No objection or motion to strike is made at this point and, indeed, none is made until counsel for Maryland Casualty has taken the witness on cross-examination and elicited from Johnson the bald statement, "I was the man that cut the water off."
Nothing in the discovery request required disclosure of the names of witnesses familiar with the City of Jackson's procedures for handling service calls. Therefore, Johnson was competent as a witness on that subject. If Plaintiff's counsel had left well enough alone, that no doubt would have been the end of the matter. Unable, however, to resist cross-examining a witness who really hadn't said anything very important to the case, counsel elicited the answer which, of course, devastated his cause on a critical issue. Since this answer was elicited by Plaintiff's cross-examination, any objection based upon failure to provide Johnson's name in discovery was waived.
The assignment of error is denied.

V.
Maryland Casualty assigns as error the refusal of a jury instruction which would have provided as a matter of law that the City was negligent for failure to remove the water meter.
Maryland Casualty attempted to recover on two theories: (1) that the City failed to turn the water off and was negligent in not doing so and (2) that, even if it did turn the water off, by failing to remove the water meter the City was negligent. The point of the second theory was that, if the meter had been removed, no unauthorized person could have restored the water service. As was, with only the valve allegedly turned off, anyone with a screwdriver or a crescent wrench could easily have cut the water back on.
Maryland Casualty requested a jury instruction encompassing the second theory.[2] The City objected on the ground that to require the City to pull the meter was more *960 of a duty than has heretofore been imposed by our law. According to the City, its only duty to the customer requesting cut off of water service to his residence was to turn off the valve. The court asked counsel for Maryland Casualty if he had any authority to offer in support of the instruction  he did not. The Circuit Court noted that the instruction would be proper only if the City had a duty to remove the meter and, absent apparent authority to that effect, declined to give the instruction.
On appeal Maryland Casualty argues that under traditional negligence elements  a duty owed, a breach, a causal relation, and damages  the City was indeed liable for failing to remove the water meter. Several City employees admitted that removal of the water meter could have been accomplished without great difficulty and that the chances of someone wrongfully or inadvertently getting water into the house would thereby have been greatly diminished. Citing City of Jackson v. Locklar, 431 So.2d 475 (Miss. 1983), Maryland Casualty notes that the concept of duty and the burdens placed upon municipalities have grown in past years and the question of negligence should have been tendered to the jury.[3]
The City cites a 1952 case from a Texas appellate court, City of Bryan v. Jenkins, 247 S.W.2d 925 (Tex.Civ.App. 1952) in support of its argument that a city has no duty to lock, remove or otherwise secure the cutoff valve in a water meter box.
While municipal responsibility may have increased over the past few years, the City is still not held to be an insurer of the safety of motorists on its streets or customers *961 of its water services. The standard imposed upon a city by tort law is that of reasonable care. No heretofore extant rule of law imposing upon the City any duty to take the precaution of removing the meter has been called to our attention, and we are not this day disposed to fashion any such duty.
The Circuit Court submitted to the jury Jury Instruction D-8:
The court instructs you that if you find from the evidence that the City of Jackson turned off the water to the house of George or Birdie Carr, then the court instructs you that the City has no further duty to lock, remove, or otherwise secure the cutoff valve in the water meter box so as to prevent any person from tampering with the water connection or turning on the cutoff valve. Other than turning off the water meter the City of Jackson had no further duty to guard against the possibility that the water might escape from frozen or bursted pipes located in the house of George or Birdie Carr.
We consider that Instruction D-8 correctly states the legal duty to which the City was subject. The Circuit Court correctly refused Instruction 9-A.

VI.
Maryland Casualty argues here that, as the evidence was contrary to the verdict, a new trial should have been granted. Reversal for failure to grant a new trial is proper only when it is manifest that the trial judge's denial constitutes an abuse of discretion. Anchor Coatings, Inc. v. Marine Industrial Residential Insulation, Inc., 490 So.2d 1210, 1215 (Miss. 1986); Clark v. Columbus & Greenville Railway Company, 473 So.2d 947, 950 (Miss. 1985); Rule 59, Miss.R.Civ.P.
In this case when the credible evidence is viewed in the light most favorable to the non-moving party, it becomes evident that no miscarriage of justice is present. Thus no error lies here.
AFFIRMED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Effective January 1, 1986, this rule has been transferred to and has become Rule 611(c), Miss.R.Ev. The Official Comment to Rule 611 states that the phrase "identified with an adverse party" should be read more broadly than was done in Harris v. Buxton T.V., Inc., 460 So.2d 828, 831 (Miss. 1984).
[2] Jury Instruction 9-A read:

The court instructs the jury that if you find from a preponderance of the evidence that the City of Jackson did in fact cut off the water to the Carr house in August, 1981, and the water was later cut on by some unknown person, and further find that the City of Jackson did not remove or `pull' the water meter from the Carr water meter in August, 1981, and that this failure to remove the water meter was negligence, as defined by the court in its other instructions, then you must then determine whether or not this negligence proximately caused or proximately contributed to the water damage to the Carr's house in January or February, 1982. If you find from a preponderance of the evidence that in fact the City of Jackson's failure to remove or `pull' that water meter from the Carr house, if any, was negligent and did proximately cause or proximately contribute to the water damage to the Carr house, then you must return your verdict for the plaintiff Maryland Casualty Company against the Defendant City of Jackson, Mississippi for $18,516.18.
[3] This case  and particularly the issue of whether the City should have imposed upon it a duty to remove the water meter, rather than merely shutting off the valve  is one susceptible of perceptive analysis under a familiar approach designed by Judge Learned Hand in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir.1947). Judge Hand reduced the definition of negligence to a simple formula. He designated "B" the burden of the precautions necessary to avert an accident, "L" as the magnitude of the loss if the accident occurred, and "P" as the probability that, if the precautions were not taken, the accident would occur. He then reasoned that a tortfeasor was negligent if B ex ante perspective) be expected to fashion a law which imposes a legal duty upon a party to do B where the cost of B is less than PL. This is particularly so where, as here, only property interests are implicated.

Applied in the case at bar, we would weigh the burden upon the City of a practice of handling all disconnection service calls by removing the water meter, not just closing the valve. There is, to be sure, testimony in the record that removal of the meter is a relatively simple procedure although common sense suggests that an additional cost to the City is that of reinstalling the meter once the residence is sold and a new hook-up order is received. We know that L in this case is $18,516.18. According to the Hand formula, the loss should be discounted by the probability of its occurrence. Here imprecision is the order of the day. For we first confront the probability that, once the valve has been turned off, some unauthorized person will turn it back on  a probability we regard as slight. Added to this, further discounting the probability of harm, is the cold weather causing the pipes to freeze. What is the likelihood of that occurring? If we preceive the Hand formula correctly, the loss would have to be discounted by the probability of a conjunction of an unauthorized person turning the valve on at or prior to a time when the pipes would freeze and be susceptible of bursting. Our suspicion is that this probability was quite remote.
Our decision this day in no way relies upon this approach. For one thing, the parties and their counsel have not presented us with information and data which might enable us to perform the Hand analysis. We consider, however, that the Hand formula has great explanatory power and are very much aware that it is being employed with increasing frequency as a tool for elucidating difficult problems of legal fault. See, e.g., Davis v. Consolidated Rail Corp., 788 F.2d 1260, 1263-66 (7th Cir.1986); United States Fidelity & Guaranty Company v. Jadranska Slobodna Plovidba, 683 F.2d 1022, 1026-29 (7th Cir.1982); Golden v. McCurry, 392 So.2d 815, 819-20 (Ala. 1980) (Faulkner, J., dissenting in part and concurring in part); cf. Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1433 (7th Cir.1986); Phillips v. Croy, 173 Ind. App. 401, 363 N.E.2d 1283, 1285 (1977); Cooley v. Quick Supply Company, 221 N.W.2d 763, 769 (Iowa 1974). See generally Posner, Economic Analysis of Law 147-152 (3d ed. 1986); Polinsky, An Introduction To Law and Economics 37-49 (1983); Dworkin, Taking Rights Seriously 98-100 (1977); Hart, The Concept of Law 129 (1961).