521 So.2d 857 (1988)
COMET DELTA, Inc.
v.
PATE STEVEDORE CO. OF PASCAGOULA, INC.
No. 57188.
Supreme Court of Mississippi.
February 24, 1988.
J. Robertshaw, Robertshaw, Terney & Noble, Greenville, for appellant.
W. Swan Yerger, Heidelberg, Woodliff & Franks, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Comet Delta, Inc. ("Delta") appeals the dismissal of its action brought in the Chancery Court of Jackson County, Mississippi, against Pate Stevedore Company of Pascagoula, Inc. (Pate) for alleged damage caused to Delta's rice stored at the Jackson *858 County Port Authority in August 1981. Delta alleged $247,161.86 in damages.
The chancery court granted Pate's motion to dismiss based on Delta's failure to state a claim upon which relief could be granted. Delta assigns this error:
APPELLANT ASSIGNS AS ERROR ACTION OF THE CHANCELLOR IN GRANTING A MOTION TO DISMISS THE AMENDED COMPLAINT UNDER RULE 12(b)(6), MRCP, THUS DENYING IT ITS DAY IN COURT, WHERE THE FACTS IN THE RECORD DEMONSTRATE ONE OR MORE OF SEVERAL GROUNDS SUPPORTING RELIEF.

FACTS
Since this case presents a dismissal based on pleadings, there is little factual development. However, a brief summary of the facts follows:
This case was commenced by Comet Delta, Inc.,[1] as an action against Pate Stevedore Company of Pascagoula, Inc. ("Pate"), and "John Doe," the then unknown owners of coal stored near Terminals "A" and "F" on the Jackson County Port Authority ("Port") premises, under lease to Pate, and located in the vicinity of Terminals "G" and "H" under lease to Ryan-Walsh Stevedoring Company, Inc. ("Ryan-Walsh").
When the identity of the owners became known, Delta amended the complaint naming Armada Coal Export, Inc. ("Armada"), and Zenith Coal Sales ("Zenith") as defendants in the stead of "John Doe." This was the only amendment. Zenith filed no response, and a judgment was entered November 21, 1983, against it which remains unsatisfied. Armada filed a petition for bankruptcy and this action was dismissed without prejudice as to it on May 20, 1985. The only remaining parties at interest are Delta and Pate.
The allegations in the complaint are that Delta had shipped itself, care of Ryan-Walsh, 200,000 50-kilo polypropylene bags of U.S. No. 2 or better milled rice, maximum 4% brokens, for storage in Port terminals leased by Ryan-Walsh. It contracted to sell this rice to Lodean, Ltd. ("Buyer") of London, United Kingdom, for $614 per metric ton, f.o.b. Port. This purchase price on 10,022.68 metric tons equals $6,153,925.52.
About half this rice was stored by Ryan-Walsh in Terminals "G" and "H" and damaged by windborne coal dust from large piles of coal placed by Pate in open storage across a slip from Terminals "G" and "H."
Buyer designated SGS Control Services ("SGS") as its agent for inspection and acceptance of the rice prior to shipment to Kalabar, Nigeria. On August 17, 1981, Delta gave Ryan-Walsh instructions to remove plastic drapes covering rice stored in Terminals "G" and "H" for purposes of fumigation, to permit inspection by SGS as agent for Buyer. During the period of August 17-24, while the rice was uncovered for inspection, coal dust stored by Pate was carried by winds and contaminated this rice. As a result of this contamination, SGS rejected the rice for the account of the Buyer.
As a direct and proximate result of this contamination, Delta alleged monetary damages amounting to $247,161.86, itemized in paragraph 6 of the amended complaint.
The amended complaint charges that coal dust in open storage has a known propensity to be blown by winds and deposited upon nearby property, that Pate interfered with Delta's legal right to store its property in adjacent terminals free from harm without just cause or excuse, and that Pate committed an intentional act involving a culpable wrong, resulting in damage to Delta's property and losses under its contract as the necessary consequence of Pate's acts. It further charged that Pate is liable to it under the rule of absolute or strict liability *859 for all damages proximately caused by or resulting from contamination of its rice.
Pate's answer was duly filed and later supplemented with two additional defenses. During July 1985 Pate noticed a motion to dismiss for hearing before the chancellor based on the grounds that:
The Amended Complaint fails to state a claim upon which any relief can be granted against this defendant.
Pate's motion was heard on July 8, 1985, and on December 4, 1985, the chancellor entered an order dismissing the amended complaint under Rule 12(b)(6), M.C.R.P., from which this appeal is prosecuted.
This Court has stated that:
A motion to dismiss under MRCP 12(b)(6) tests the legal sufficiency of the complaint ... to grant this motion there must appear to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved in support of the claim.
Lester Engineering v. Richland Water & Sewer District, 504 So.2d 1185, 1186 (Miss. 1987) (quoting Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985)). See also Martin v. Phillips, 514 So.2d 338 (Miss. 1987); State Ex Rel Breazle v. Lewis, 498 So.2d 321, 324 (Miss. 1986); Ford v. White, 495 So.2d 494, 496-97 (Miss. 1986); Whitten v. Commercial Dispatch Publishing Co., Inc., 487 So.2d 843, 845-46 (Miss. 1986); Gray v. Baker, 485 So.2d 306, 308 (Miss. 1986); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Stanton & Associates v. Bryant Construction Co., 464 So.2d 499, 505 (Miss. 1985).
When reviewing a complaint under 12(b)(6), it is important to evaluate the complaint on the basis of Rule 8(a) and (e).
Rule 8(a) Miss.R.Civ.P., requires only that in its complaint a plaintiff provide (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.
Rule 8(e) Miss.R.Civ.P., then provides (1) each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required.
When a complaint is tested via a motion under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, the sufficiency of the complaint is in substantial part determined by reference to Rule 8(a) and (e).
Luckett, 481 So.2d at 290; Stanton & Associates, 464 So.2d at 505.
Evaluation under this standard is quite broad. Wright and Miller, in analyzing the identical federal rule, state:
The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief. The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.
* * * * * *
Nonetheless, as is discussed more fully elsewhere, the pleader must set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.
5 C. Wright & A. Miller, Federal Practice & Procedure § 1358 at 601-02, n. 76 (1969) (emphasis added).
Delta argues it has stated a claim under nuisance. There are basically two types nuisances, public and private.
Mississippi has no seminal case distinguishing between public and private nuisances. The Restatement (Second) of Torts § 822 outlines the elements of private nuisance, thusly:
One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
(a) intentional and unreasonable, or
(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for *860 abnormally dangerous conditions or activities.
In its complaint Delta alleged Pate committed an intentional act involving a culpable wrong by storing coal in the open knowing its propensity to produce windborne dust. Thus, Delta has sufficiently alleged that part of a claim for private nuisance alleging an intentional and unreasonable invasion.
Pate suggests, however, that Delta has not alleged and, indeed, cannot show that it has an "interest in the private use and enjoyment of land," the invasion of which private nuisance protects. See Reber v. Illinois Central Railroad Company, 161 Miss. 885, 138 So. 574 (1932); Prosser and Keeton on the Law of Torts, § 87 at 621 (5th Ed. 1984). Taking the pleading in the light most favorable to Delta, we are constrained to disagree. The pleadings do not clearly establish that Delta lacks a sufficient interest in land.
The pleadings disclose only that Ryan-Walsh leased the terminal, or warehouse, from the Jackson County Port Authority and Delta stored its rice with Ryan-Walsh. If Delta has a leasehold interest, or some other real property interest, it may sue in nuisance. On the face of these pleadings, that issue cannot be resolved. "Such an issue must, necessarily be resolved by reference to matters ... outside the pleadings," and, therefore, dismissal was improper. Lester Engineering, 504 So.2d at 1187. Resolving the ambiguity in favor of Delta, it is not clear that Delta could not recover "under any set of facts that could be proved in support of the claim." Busching v. Griffin, 465 So.2d 1037, 1039 (Miss. 1985). See also Lester Engineering v. Richland Water & Sewer District, 504 So.2d 1185, 1187 (Miss. 1987). Dismissal here was premature.
Likewise, we think the complaint cannot be dismissed due to its failure to state a claim for relief under public nuisance. The fact that Pate's actions might support a private nuisance claim does not prohibit recovery for a public nuisance. Private and public nuisances may overlap. Prosser and Keeton, supra; Restatement (Second) of Torts, § 821B, comment g. Section 821B outlines the elements of a public nuisance.
(1) A public nuisance is an unreasonable interference with a right common to the general public.
(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
(b) Whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
(c) Whether the conduct is of a continuing nature or has produced a permanent or longlasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.
However, the inference must be of a public right.
To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several... . It is not necessary, however, that the entire community be affected, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right.
Prosser & Keeton, supra, § 90 at 645. See, e.g., Robinson v. Indianola Municipal Separate School District, 467 So.2d 911, 918 (Miss. 1985) (obstruction of public road is public nuisance); Panhandle Oil Co. v. Trigg, 148 Miss. 306, 312, 114 So. 625, 626 (1927) (same); Shoemaker v. Coleman, 94 Miss. 619, 625, 47 So. 649, 651 (1909) (same).
Pate in effect argues that Delta must specifically allege each element of a public nuisance. The test, however, is whether there are allegations from which the elements may be inferred, and this test Delta meets. From the allegation of black, greasy, airborne coal dust there can be *861 inferred a significant interference with the general public welfare, thereby raising a claim of unreasonable interference with a public right. The facts when developed might also show a violation of clean air standards, further supporting a public nuisance suit under Restatement § 821B(2)(b).
To recover damages the plaintiff usually must have sustained harm different in kind, rather than in degree, than that suffered by the public at large. Robinson, 467 So.2d at 918; Panhandle Oil v. Trigg, 148 Miss. at 313, 114 So. at 626; Restatement (Second) of Torts § 821C. Degree cannot be totally disregarded, however, as Prosser and Keeton note, because someone experiencing a greater degree of harm will often be able to show particular harm.
Where the plaintiff suffers personal injury, or harm to his health, or even mental distress, there is no difficulty in finding a different kind of damage. The same is true as to physical harm to his chattels, or interference with the physical condition of land....
Prosser and Keeton, supra, at 648. Being prevented from completing contractual obligations may be considered particular harm, as where a highway obstruction interferes with plaintiff's performance. See Prosser & Keeton, supra, § 90 at 649-50. Delta also points to Pruitt v. Allied Chemical Corp., 523 F. Supp. 975 (E.D. Va. 1981), where fishermen were allowed to maintain a public nuisance action against an alleged polluter of Chesapeake Bay.
We think Delta has sufficiently alleged particular harm. Of course, the proof may not support recovery. The nuisance may not affect the general public. The harm may not prove to be a significant interference with either a public or private right. See Nissan Motor Corp. v. Maryland Shipbuilding and Drydock Co., 544 F. Supp. 1104 (D.Md. 1982), aff'd., 742 F.2d 1449 (4th Cir.1984); Restatement (Second) of Torts § 821F, comments d and g. However, the likelihood of marshalling sufficient proof has nothing whatsoever to do with whether the complaint states a claim upon which relief may be granted. All we determine at this stage is that Delta has alleged a cause of action in nuisance.
Delta also argues its complaint stated a claim for relief based on negligence. If correct Delta will have stated an additional theory for recovery or perhaps another basis for a claim of private nuisance.
Delta also argues it has a nuisance claim sounding in strict liability. We have on several occasions found defendants absolutely liable for what were essentially private nuisances. See Town of Fulton v. Mize, 274 So.2d 129, 131 (Miss. 1973) (raw sewage seeping onto plaintiff's land); Blue v. Charles F. Hayes & Associates, Inc., 215 So.2d 426, 428-29 (Miss. 1968); Love Petroleum Co., Inc. v. Jones, 205 So.2d 274, 275 (Miss. 1967) (salt and oil escaping onto plaintiff's property); Southland Co. v. Aaron, 224 Miss. 780, 80 So.2d 823 (1955); Southland v. Aaron, 221 Miss. 59, 72 So.2d 161 (1954). However, these cases do not represent a clear enunciation of a strict liability standard, due to their narrow focus on the interest protected without considering the conduct producing the harm.
Whether we will continue to follow this precedent, or whether we will enunciate some other standard for strict liability, is a question we need not decide on this record, and thus we do not reach it. Finding error in the sustaining of the motion to dismiss, we reverse and remand to the Chancery Court of Jackson County, Mississippi, for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON and SULLIVAN, JJ., specially concur.
ROBERTSON, Justice, concurring:
I agree with little reservation that, consistent with our cases, Comet Delta, Inc., has stated a claim sufficient to withstand a motion to dismiss, Rule 12(b)(6), Miss.R. Civ.P. I agree further that our law regarding the nuisance claims asserted is less than clear or fully developed.
*862 It seems to my mind that this is the sort of case that ought be considered under a shorthand formula first suggested by Judge Learned Hand in United States v. Carroll Towing, Inc., 159 F.2d 169, 173 (2d Cir.1947). We explained this formula recently in Maryland Casualty Co. v. City of Jackson, 493 So.2d 955, 960 n. 3 (Miss. 1986). Judge Hand
designated "B" the burden of the precautions necessary to avert an accident, "L" as the magnitude of the loss if the accident occurred, and "P" as the probability that, if the precautions were not taken, the accident would occur. He then reasoned that a tortfeasor was negligent if Bex ante perspective) be expected to fashion a law which imposes a legal duty upon a party to do B where the cost of B is less than PL. This is particularly so where, as here, only property interests are implicated.
493 So.2d at 960 n. 3.
Applied to the case at bar, we should weigh the burden upon Pate Stevedore Co. of conducting its operations in such a way that coal dust could not be emitted in sufficient quantities to contaminate nearby cargo. Assuming that L in this case is $247,161.86 (a point obviously requiring proof), that loss should be discounted by the probability of its occurrence, that is, by the probability that winds would blow in just the right direction and with just the right force that the coal dust contaminate Comet Delta's rice.
In addition to the cases and authorities cited in Maryland Casualty, see also, in a variety of factual settings, use of the Hand formula in Pruitt v. Allied Chemical Corp., 523 F. Supp. 975, 978 (E.D. Va. 1981); United States v. Atlantic Richfield Co., 429 F. Supp. 830, 836 (E.D.Pa. 1977); Wildwood Mink Ranch v. United States, 218 F. Supp. 67, 75 (D.Minn. 1963); and People Express Airlines, Inc. v. Consolidated Rail Corporation, 100 N.J. 246, 495 A.2d 107, 117-18 (1985). See also Landes and Posner, The Economic Structure of Tort Law, 85-107 (1987); Calabresi and Klevorick, Four Tests For Liability In Torts, 14 J.Leg.Stud. 585 (1985).
There is a related point of view. Again assuming an ex ante perspective, which party could have prevented this loss at the least cost? Assuming, for example, that it was necessary to fumigate the rice and permit inspection by SGS Control Services, the buyer's agent, our judicial task would be to identify factually the various precautionary options open to the parties that might have prevented the contamination loss, and, as well, the cost of each such option. Considering then those options open to Comet Delta and, in turn, the options available to Pate, the law's burden ought fall upon that party which, at zero transaction costs, could have prevented the loss at the least cost. That party is said to be the least cost risk bearer, to use the increasingly familiar lingo. Cf. Goetz, Law and Economics, 118-27 (1984). In other words, that party which, ex ante, could have prevented the loss at the least cost should be burdened in law with the risk and consequently the loss.
The seminal discussion of this idea is Coase, The Problem of Social Cost, 3 Journ. Law & Economics 1, 1-28 (1960). See also Landes and Posner, The Economic Structure of Tort Law, 29-53 (1987); Posner, Economic Analysis of Law, 5-9, 42-48, 56-57 (3d ed. 1986); Murphy and Coleman, The Philosophy Of Law, 228-34 (1984); Ackerman, Reconstructing American Law, 46-65 (1984); Polinsky, An Introduction To Law and Economics, 11-24 (1983); Calabresi and Melamed, One View Of The Cathedral, 85 Harv.L.Rev. 1089, 1106-10 1115-24 (1972).
At the moment we do not have information nearly so sufficient to ascertain with confidence the outcome suggested by these two related economic approaches or, even, whether either of those is susceptible of beneficial use in this case. For the moment *863 I am content to urge, upon remand and trial, that the parties develop the proofs so that these increasingly familiar approaches will in fact have "great explanatory power". Maryland Casualty Company v. City of Jackson, 493 So.2d 955, 960 n. 3 (Miss. 1986).
Except as I here have suggested otherwise, I concur in today's decision and in the Court's opinion announcing it.
SULLIVAN, J., joins in this opinion.
NOTES
[1] Delta's name at the time of the relevant events was PIRMI Delta, Inc., a wholly-owned subsidiary of Pacific International Rice Mills, Inc. During October 1982, all of its stock was acquired by Early California Industries, Inc., and the corporate name changed to Comet Delta, Inc. To avoid confusion as to "who paid what" or "who suffered what damage," the parent company assigned all its interest in this action to Delta.