SULLIVAN, Justice,
for the Court:
This is a breach of contract case. T.L. Brantley and Tammy Jean Brantley are chicken farmers. They contracted with Green Acre Farms, Inc. (Green Acres), a processor, to receive from Green Acres three *526 flocks of chickens. This contract was a result of a settlement of a prior lawsuit between the Brantley’s and Green Acres. The contract was drawn by the lawyer for the Brantley’s. After one flock was delivered and grown under the contract, Green Acres refused to deliver anymore flocks.
On November 27,1989, the Brantley’s sued Green Acres in the Circuit Court of Leake County, Mississippi alleging that the contract provides that Green Acres would deliver three flocks of chickens, and that the delivery of only one flock and refusal to deliver the other two constitutes a breach of contract. As damages the Brantley’s claimed that they lost earnings in the amount of $18,400.00 plus expenses incurred in the amount of $2,500.00, for a total claim $20,900.00.
Green Acres contended that the Brantleys failed to comply with the terms of the Contract by not maintaining a fifty percent (50%) efficiency ranking on the first flock of chickens. Green Acres argued further that the Brantleys’ failure to meet the efficiency ranking specified in the Contract voided the Contract and relieved the processor of any further obligation to deliver more chickens. Moreover, the attorney for the Brantleys’ sent a letter to the attorney for Green Acres’ prior to the delivery of the first flock of chickens which stated, among other things: “[i]n other words, should he (Mr. Brantley) fall below the fifty percent (50%) on the first flock no new flocks will be provided.”
In their Affirmative Defenses Green Acres argued that because the Brantleys were aware of their lawyer’s letter clarifying the Contract, and because they failed to disavow the letter or take any action to inform them that they disagreed with what their lawyer wrote concerning the meaning of the Contract, the Brantleys are bound by the letter.
Green Acres filed a Motion For Summary Judgment and an Amended Answer and Affirmative Defenses, alleging further that the Brantleys failed to comply with the terms of the Contract in another respect — a failure “to average in grade on breast blisters.... ”
Summary Judgment was denied and after trial the jury awarded the Brantleys $20,-266.00.

STATEMENT OF THE FACTS

The Grower-Contract Agreement in question was entered into between the Brantleys and Green Acres as part of a settlement of a prior lawsuit that had been filed by the Brantleys. Green Acres entered into the Contract in consideration of a Release signed by T.L. Brantley on August 18, 1988, relieving Green Acres from liability on the previous suit. In further consideration of the signed Release, Green Acres paid the Brant-leys $3,000.00.
The Contract specified that Green Acres would provide the Brantleys with three (3) flocks of chickens pursuant to certain terms and conditions. The Contract provided that the Brantleys would improve their watering system. The Contract further provided:
2. If the contract grower, T.L. Brant-ley, for the three (3) flocks, maintain (sic) an efficiency ranking of 50% of the growers and average in grade on breast blisters, Green Acres Farms, Inc., shall enter into further contract, subject to the specifications as set out in paragraph number five (5) herein.
[[Image here]]
5. If the contract grower, T.L. Brant-ley, does maintain a ranking of 50% in efficiency on the three (3) flocks as stated in paragraph 2 herein, then a new contract shall be offered to T.L. Brantley.
On August 22, 1988, Maryellen R. Duprel, attorney for the Brantleys, sent a letter to Richard Ballard, attorney for Green Acres, stating:
Dear Richard:
In response to your telephone request this date, this is to confirm that as per the Growers-Contract Agreement, which is Exhibit “A” to the Receipt (sic), Mr. Brantley is to maintain an efficiency ranking of 50% for each of the three (3) flocks provided to him. In other words, should he fall below the 50% on the first flock, no new flocks will be provided.
I trust this answers your question, and I remain,
Very truly yours,
*527 DUPREL & ASSOCIATES
Maryellen R. Duprel
Lavelle Williams, called as an adverse witness by the Brantleys, testified that he was once the live production manager for Green Acres and that Green Acres furnishes its contract growers with the chickens, feed, and any medications. The farmers provide the labor, management and chicken houses. Mr. Williams said that the contracts between Green Acres and farmers like the Brantleys are based on each individual flock. They are not normally based on three flock guarantees.
Green Acres maintains supervision over the growers, reserving the right to inspect the chickens and growing conditions at any time. The growers get paid a certain amount per pound of meat produced, and receive a bonus if their efficiency rating is high enough in comparison with the other contract growers. The efficiency rating is based on so many pounds of meat produced by so many pounds of feed. The chickens and left over feed, if there is any, are weighed at the Green Acres Plant to determine the efficiency ratings and the amount owed to each grower. According to Williams, the growers have the right to be there when the chickens and feed are weighed.
Mr. Williams testified that as far as he knew, the Brantleys had always met Green Acres’ specifications through the years they had contracted to grow chickens. However, in 1988, the Brantleys filed suit when Green Acres opted not to renew the contract with them. Mr. Williams testified that this refusal was based on breast blisters and poor efficiency ratings. The suit however, was settled, and in consideration of that settlement, Green Acres paid the Brantleys $3,000.00 and entered into the Contract at issue in this case. Williams was still working for Green Acres at the time the Contract was executed.
Mr. Williams testified that the Contract was executed by the Brantleys on August 18, 1988, on the same day the Release was signed. Although he ultimately signed the Contract on behalf of Green Acres, Mr. Williams did not sign it at first because he interpreted it to be a long-term contract— “three flocks without any stipulations.... ” He then “requested clarification of it.” Williams said the Contract was vague to him because it could be interpreted to mean that three consecutive flocks were offered in the agreement. Williams was only aware of one type of contract between Green Acres and chicken growers — one flock of chickens per contract. After Maryellen R. Duprel clarified the Contract in her letter of August 22, 1988, Mr. Williams signed it on behalf of Green Acres.
Under the Contract, Green Acres furnished the Brantleys with a flock of chickens which was processed and determined by Green Acres to have a poor efficiency rating and too many breast blisters (sores that develop on the chest of the chicken). The Brantleys were informed that they would receive no more chickens. Mr. Williams admitted that other chicken farmers for Green Acres had chickens with breast blisters and had been under the 50% mark for efficiency, but that the Brantleys were the only growers terminated. Mr. Williams denied the termination took place because of the prior lawsuit filed by the Brantleys.
At the time of trial, Mr. Brantley was seventy (70) years of age and no longer in the chicken growing business. He testified that he started growing chickens for Green Acres around 1969 or 1970.
Regarding the Contract in this case, Mr. Brantley testified that he wanted an agreement that promised him “three flocks of chickens with nothing attached to it.” Although he had contracted for one flock at a time prior to this contract, he wanted a contract guaranteeing three flocks because he was getting older and planned to retire after raising those three flocks. His lawyer, Ms. Duprel, prepared the Contract in question.
Mr. Brantley testified that approximately two weeks after he signed the Release and the Contract he received a copy of the August 22, 1988, letter that Maryellen Duprel sent to Richard Ballard. Mr. Brantley said he read the letter and compared it to the Contract. He testified that he disregarded the letter because he believed the Contract *528 would control it and that he had never authorized his lawyer to write the letter.
Mr. Brantley stated that he was going by the Contract and not by the letter even though he knew Green Acres was relying on the letter. He never called his lawyer, Ms. Duprel, to question her about the letter. He did not tell Green Acres that his lawyer did not have authority to send the letter until after Green Acres refused to deliver any more chickens. Mr. Brantley stated that Green Acres should have known his lawyer had no authority to send the letter because he had not signed it.
Mr. Brantley admitted that he had no proof to contradict Green Acres’ claim that he was below grade on breast blisters and below the 50% mark on efficiency rating.
/.

DID THE TRIAL COURT ERR IN NOT GRANTING A DIRECTED VERDICT IN FAVOR OF GREEN ACRES OR IN DENYING THEIR MOTION FOR J.N.O.V OR IN THE ALTERNATIVE FOR A NEW TRIAL?

The linchpin of the Green Acres argument is that the Brantleys admit that they received a copy of the letter six months prior to the delivery of the first flock of chickens under the Contract, and because they took no action to disavow the letter, they ratified the letter and are therefore barred from recovering on the contract.
In Guerdon Industries, Inc. v. Gentry, 531 So.2d 1202 (Miss.1988), this Court said:
When an appellate court examines a trial court’s decision regarding a motion for directed verdict, it must do so with great care. It is a well-established rule that when a trial court, or the Supreme Court in this case, considers such a motion, it must do so “in the light most favorable to the party opposed to the motion.” White v. Hancock Bank, 477 So.2d 265, 269 (Miss.1985). See also, Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss.1984). The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the defendant (movant) that reasonable men and women could not have arrived at a verdict for the plaintiff (non-movant), granting the motion is required. The burden on the movant in such cases is great, for if there is “substantial” evidence opposed to the motion, which would allow reasonable and fair-minded men and women to reach differing conclusions, the motion must be denied, (citations omitted)
Likewise, we will not reverse a trial court’s decision denying a motion for a new trial unless it is manifest, after viewing the evidence in the light most favorable to the non-moving party, that the trial court’s denial constitutes an abuse of discretion. Maryland Cas. Co. v. City of Jackson, 493 So.2d 955 (Miss.1986).
In support of their ratification argument, Green Acres cites Gulf Refining Co. v. Travis, 201 Miss. 336, 29 So.2d 100 (1947), wherein it was said:
“Ratification” is a technical term peculiar to the law of agency and means the affir-mance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.
Id., at 337, 29 So.2d 100. The opinion further says:
It is a principle which pervades the decisions by the great weight everywhere that when a person is sought to be charged by way of ratification, it must be shown that he had full and complete knowledge of all the material facts, and a familiar expression used in that connection is that the proof must show that such full knowledge has been brought home to him, and it is not enough that he has information which, if pursued by him, would have led him to full and complete knowledge.
Id. at 370, 29 So.2d 100. The next year, the Gulf Refining Co. v. Travis, 201 Miss. 336, 30 So.2d 398 (Miss.1947), was before this Court again on suggestion of error. We stated then that “[rjatification is a matter of intention, its existence is a question of fact; in *529 order that there be a ratification there must be a voluntary assumption of the unauthorized act either on full information or on less than full information if undertaken deliberately in disregard of the fact that all knowledge of the transaction available has not been obtained.” Id. at 399, 30 So.2d 398.
Green Acres also cites Meyer, Weiss & Co. v. Morgan, 51 Miss. 21 (1875) for the proposition that an overt act disapproving of the unauthorized act is not necessary and that silence will be equivalent to approval for purposes of ratification. In that case, Morgan shipped cotton to his agent, Meyer, Weiss & Co., and instructed them not to sell his cotton until he ordered them to as he believed the market would improve and he would get more money for it. Without his instructions, the defendants sold the cotton and the following month the price went up.
Morgan filed suit for the lost profit. On the day of or the day after the sale, Meyer, Weiss & Co. notified Morgan by mail that they had sold the cotton and informed him of the price. Morgan admitted receiving the letter. He never thereafter, in continuing correspondence, expressed dissatisfaction until he filed suit. He claimed that “he preferred not to agitate that subject until he had withdrawn his funds from their hands.” Id. The Court applied the doctrine of ratification, holding that once Morgan had accepted the proceeds from the sale, he had ratified the sale and thereafter waived any claim he may have had. The Court stated:
The principal, within a reasonable time, must elect to approve or disapprove the unauthorized act of the agent, of which he has been informed. He cannot remain silent and await the vicissitudes of a fluctuating market, and if the price rises, disaf-firm and claim the difference; or if it declines, acquiesce in the sale ... He cannot, where his instructions have been disobeyed, receive the money and silently wait and watch the market, and if the price advances claim the difference.
Id. at 25.
It is undisputed in this record that Mr. Brantley received a copy of the letter from his lawyer approximately two weeks after he received the $3,000.00 settlement cheek from Green Acres in partial consideration for the signed Release. It is also undisputed that after he received the letter, Mr. Brantley took no further action. He did not contact Ms. Duprel nor Green Acres in order to disavow or repudiate the letter. He knew that Green Acres.was relying on what his lawyer had represented to them.
Ms. Brantley also knew about the letter and took no action. Approximately six months after receiving a copy of the letter, the Brantleys accepted the first flock of chickens knowing that Green Acres had received the letter containing the statement that “should he fall below the 50% on the first flock, no new flocks will be provided.”
It is undisputed that Ms. Duprel was the attorney for the Brantleys and that she drew up the Contract in question. She was the only lawyer representing the Brantleys and had dealt with Mr. Ballard, the attorney for Green Acres, for sometime as representative for the Brantleys.
The trial judge obviously believed that the letter in question purported to amend the Contract, and did not simply clarify its meaning. In ruling on Green Acres’ motion for directed verdict, the court said:
I think we have gotten very close to a legal question there of whether or not an attorney can amend a contract. I know she can clarify it, and if she was either authorized or later ratified or confirmed, the Brant-leys would be bound by it; but, I think that is a question for the jury.
Of course, the documents that were introduced about the breast blisters and the ranking, to me, really, have no bearing on the matter, if the jury should find that Ms. Duprel’s letter is invalid and of no effect. I don’t think that would constitute a defense under the original contract.
BY MR. McNEEL: Your Honor, I don’t mean to be argumentative, but the Court took the same position at motion for summary judgment. I honestly cannot see what more Green Acres could have done in this case.
BY THE COURT: I tell you, Green Acres could have recognized this was a very material change to the contract and *530 could have refused to sign it or consummate the settlement without a new contract having been drawn up and signed by the Plaintiffs. I think Green Acres, I know they did, acted in good faith in relying on Ms. Duprel's letter. There is no question in my mind about the good faith. The question is are they legally entitled to do that, when the letter completely changes what the client signed. That, to me, is mostly a legal question.
Now, then, you get into the purely factual question of this. Ms. Duprel wrote the letter. Green Acres relied on it. Did the Brantleys know that Green Acres was relying on it. Did they ratify Ms. Duprel’s actions. Did they cause Green Acres to act to its detriment based on something they knew shouldn’t have been done. The jury may very well find that, but I think that is going to be the issues for the jury to decide, and that’s the reason I am going to let it go to them.
MR. MeNEEL: I don’t see how they could find any other way, since there was no testimony but the fact that they received the letter, and they did nothing to disavow it. How could they be anything but estopped?
BY THE COURT: I think you could believe Mr. Brantley’s testimony he didn’t authorize her to write it. That they should have known it could not alter the contract materially without his signature, and, therefore, treat it as a nullity, which he apparently did.
I don’t think we have got either side acting in bad faith in this. I think it is a disagreement. You have got mixed questions of law and fact as I see it, but I think you have got a factual question for the jury to decide. Did Green Acres act in good faith in relying upon the letter? I think the jury should answer that yes, and probably will. Did the Brantleys act in good faith on their reliance that the contract expressed the agreement between them and Green Acres, not the letter? I think the jury could find that, but I think it is a jury question, and if I am wrong, I will apologize in advance, and I am sure that the Supreme Court will straighten it out, if I am, but I think it is a jury question.
The problem with this ruling by the judge is the fact that Brantley himself stated at the trial that he knew Green Acres was relying on the letter sent to their lawyer from Ms. Duprel. Further, he knew Green Acres was relying on the letter at the time he accepted the flock of chickens. In Gulf Refining, 201 Miss, at 870-71, 30 So.2d 398, quoting Story on Agency, See. 231, note 1, this Court acknowledged the following:
The principal, before a ratification becomes effectual against him, must be shown to have had previous knowledge of all the facts and circumstances in the case, and if he assented to or confirmed the act of his agent while in ignorance of all the circumstances, he can afterwards, when informed thereof, disaffirm it. And the principal’s want of such knowledge, even if it arises from his own carelessness in inquiring or neglect in ascertaining facts, or from other causes, will render such ratification invalid. His knowledge is an essential element.
It is true that Mr. Brantley did not receive the letter until after Green Acres gave him the $3,000.00 partial settlement. Had he at that point, or even at some point prior to accepting and growing the flock of chickens, contacted Green Acres or his lawyer to disaf-firm the letter, we would be less inclined to find against the Brantleys. Mr. Brantley, however, admitted that no attempt was made to disaffirm the letter, even when the Brant-leys had full knowledge of Green Acres’ reliance thereon. There was no evidence adduced at trial to counter the inescapable finding that the Brantleys ratified their lawyer’s letter. Therefore, the trial court committed reversible error in not granting a directed verdict in favor of Green Acres at the conclusion of all the testimony.
REVERSED AND RENDERED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.